[Civ. No. 57160. Second Dist., Div. Five. May 20, 1980.]

JOHN A. McCONNELL et al., Plaintiffs and Respondents, v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,
Defendant and Appellant.

Counsel

MacDonald, Halsted & Laybourne and Joel Mark for Defendant and Appellant.

Jack D. Scott and Marcus Crahan, Jr., for Plaintiffs and Respondents.

Opinion

HASTINGS, J.—The principal issue on this appeal is whether the trial court correctly determined that defendant and appellant, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) had waived its right to arbitration.

The original complaint was filed by John and Marguerite McConnell (McConnells). The complaint was a class action suit brought on behalf of margin account customers of Merrill Lynch "who were similarly situated" with the McConnells and had "'margin accounts' with defendant presently and during the months of July, August and September, 1973." They alleged that Merrill Lynch had charged usurious interest in an amount in excess of $100 million to all of its customers. The McCon-

nells had signed an agreement with Merrill Lynch on November 21, 1966, under which Merrill Lynch would act as their broker. The agreement did not contain an arbitration clause. Merrill Lynch customers executing agreements after April 1967 signed a different agreement which did contain an arbitration clause. The class designated in the complaint includes customers signing both types of the agreement.

Merrill Lynch filed an answer to the complaint (without claiming or reserving a right to arbitration) and concurrently therewith had the action removed to the federal district court where it sought to litigate the matter. The action, however, was remanded to the state court upon a finding that the amount in controversy did not exceed $10,000. The federal court refused to aggregate the claims of the purported class members and considered only the claim of the McConnells.

After remand the McConnells served a first and second set of interrogatories on Merrill Lynch. By interrogatory No. 64 the McConnells inquired as to whether the form of customer agreement (which contained the arbitration clause) was the only agreement which governed the parties on the matters at issue. Merrill Lynch's answer affirmed it was the only agreement involved.[1] The McConnells then filed a motion for class certification and the superior court conducted five separate and lengthy hearings related thereto. During the course of these hearings, with court approval, the McConnells filed a first and second amended complaint. Merrill Lynch filed three separate oppositions to the class certification. The right to arbitration with class members signing the agreement after April 1967 was never mentioned.

At this point it is necessary to mention that the agreement signed after April 1967 also contained a provision requiring a court trying any controversy thereunder to apply New York law. During the proceedings to certify the class Merrill Lynch produced the McConnells' agreement that was signed before April 1967. As part of its opposition to the class certification it filed a document that stated: "The vast majority of MERRILL LYNCH customers signed an agreement which specifically provided for the application of New York law to their dealings with MERRILL LYNCH. The McConnells' agreement does not contain such a provision."

---

[1] It is not clear from the record why this agreement was relied on instead of McConnells'. Perhaps McConnells' counsel had a copy of the later agreement and was not aware of the differences at this point in the litigation.

Merrill Lynch did not, however, request arbitration as to this "vast majority" that the McConnells purported to represent.

The trial court ruled in favor of Merrill Lynch, finding that the class the McConnells wanted to represent did not exist and dismissed the action. The Supreme Court reversed in *McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1978) 21 Cal.3d 365 [146 Cal.Rptr. 371, 578 P.2d 1375], and returned the action to the trial court for consideration de novo of the class action issues.

Upon remittitur the McConnells filed their second motion for class certification. During these proceedings they filed a motion to add one Carolina W. Barrie as an additional plaintiff. She had signed the second agreement. The reason given for the request was "it appears that it will be necessary to add a class action representative who has signed a customer agreement with defendant containing a New York choice of law clause."

Merrill Lynch claims that this was the first time they knew a specific plaintiff with a post April 1967 agreement was involved and they quickly demanded that Barrie submit her claim along with all others similarly situated to arbitration. ▮ The superior court ruled against Merrill Lynch stating it had irrevocably waived its rights to compel arbitration and that the McConnells and Barrie could represent the class members similarly situated. For the reasons hereinafter stated we conclude the trial court was correct.

It is interesting to note at the outset that all parties basically rely on *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.-Rptr. 837, 588 P.2d 1261], in support of their position on the waiver issue. The McConnells cite the following statement from the opinion for the proposition that we must affirm the finding of waiver if substantial evidence supports it (p. 185): "Waiver of a contractual right to arbitration is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court. [Citation.] Under the general rule this question is left to the trial court where there is substantial evidence to support it. However, in cases where the record before the trial court establishes a lack of waiver as a matter of law, the appellate court may reverse a finding of waiver made by the trial court. [Citation.]"

On the other hand Merrill Lynch interprets *Doers* to hold that the mere filing of a lawsuit does not constitute a waiver of the right to arbitrate and waiver does not occur until the action has been resolved on its merits. Therefore, because there has been no final determination of the issues in our present case no waiver exists.

Although it seems the parties have read *Doers* through different bifocals, they are correct in citing it as the key case on the subject. It summarizes and analyzes most of the decisional law on the issue of a waiver to a right to arbitrate. A careful reading of the opinion discloses that there must, in addition to the filing of the action, be some *litigation* of the dispute or issues. Merrill Lynch claims this means complete litigation that leads to a final judgment on the merits. We disagree. *Doers*, emphasizes *resorting to litigation* and *litigation rights*. It cites with approval *Case* v. *Kadota Fig. Assn.* (1950) 35 Cal.2d 596 [220 P.2d 912], where the court held (p. 605) that: "the asserted right...to arbitration...must be considered in connection with the procedural basis of the litigation as a whole."

During the course of a legal action numerous matters can be litigated before there is a final judgment. It can quickly be seen that Merrill Lynch's interpretation of *Doers* would permit a party to litigate various issues through demurrers, motions for summary judgment, motions for certification of the class, or opposition thereto, etc., yet just before trial demand arbitration. This is like testing the water before taking the swim. If it's not to your liking you go elsewhere. A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. (*Maddy* v. *Castle* (1976) 58 Cal.App.3d 716, 721 [130 Cal.Rptr. 160].) Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver and would be consistent with the law as spelled out in *Doers*.

Returning to the issues of our present case we first must dispel Merrill Lynch's argument that it litigated portions of the case *before* it knew class members with arbitration agreements were included. The McConnells' original complaint covered all customers with margin accounts for the months of July, August and September of 1973. This allegation put Merrill Lynch on notice that customers signing the arbitration agreements were involved. If there was any doubt, however, this fact was clearly clarified by interrogatory No. 64 that asked if the agreement with the arbitration clause governed the parties to the ac-

tion. Merrill Lynch responded in the affirmative. And finally, after Merrill Lynch discovered that the McConnells had not signed the agreement with the arbitration clause, it did not seek to divide the two classes and arbitrate with the "Barrie class." Instead in its opposition to class certification it insisted that the court should apply New York law because the vast majority of customers had signed the (Barrie) agreement. There was no reference to the arbitration provision in the same (Barrie) agreement. It is clear Merrill Lynch early in the proceedings knew, or should have known of its arbitration rights.

After filing its answer, Merrill Lynch first moved the case to the federal court where it sought to litigate the issues. It did not seek arbitration. On remand Merrill Lynch vigorously opposed the McConnells' motion for class certification on the merits and initially won a dismissal. The reversal of the dismissal by the superior court does not mean the issue was not litigated. Additionally Merrill Lynch demurred to McConnells' second amended complaint and also filed a motion to strike portions thereof.[2]

There was substantial evidence to support the trial court's finding of waiver. Because we affirm the trial court's ruling it is not necessary to respond to other issues raised by the parties.

The order is affirmed.

Kaus, P. J., and Ashby, J., concurred.

---

[2]We want to emphasize that we are not holding that the filing of a demurrer or some other motion, in addition to the complaint or answer, is all that is required to find waiver in similar situations. The trial court must still view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate.