[No. G045603. Fourth Dist., Div. Three. Mar. 26, 2012.]

CHRISTY LEWIS, Plaintiff and Respondent, v.
FLETCHER JONES MOTOR CARS, INC., Defendant and Appellant.

**COUNSEL**

Gilbert, Kelly, Crowley & Jennett, Stephen S. Grande and Wayne I. Jeung for Defendant and Appellant.

Law Office of Michael R. Vachon and Michael R. Vachon for Plaintiff and Respondent.

## Opinion

**ARONSON, J.**—Defendant Fletcher Jones Motor Cars, Inc. (Fletcher Jones), appeals from an order denying its motion to compel plaintiff Christy Lewis to arbitrate her claims arising out of the "California Motor Vehicle Lease Agreement" (Lease) she entered into with Fletcher Jones. The trial court found the Lease's arbitration provision to be unconscionable and Fletcher Jones waived its right to arbitration by unreasonably delaying its arbitration demand and litigating Lewis's claims on the merits. Under the controlling standard of review, we conclude substantial evidence supports the trial court's waiver determination. Accordingly, we affirm the trial court's order without deciding whether the Lease's arbitration provision is unconscionable.

I

### Facts and Procedural History

In October 2006, Lewis leased a car from Fletcher Jones pursuant to the Lease. When she returned the car at the Lease's expiration in January 2011, Fletcher Jones billed Lewis nearly $19,000 for exceeding the Lease's mileage allowance, missed payments, and late charges.

On January 14, 2011, Lewis filed this action against Fletcher Jones, alleging claims for (1) violation of the Vehicle Leasing Act (Civ. Code, § 2985.7 et seq.); (2) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.); and (3) unfair competition (Bus. & Prof. Code, § 17200 et seq.). Lewis sought to rescind the Lease and recover damages based on Fletcher Jones's purported failure to include all transaction terms in the Lease. She served Fletcher Jones with the complaint on January 24, 2011, and shortly thereafter served several discovery requests, including special interrogatories, form interrogatories, requests for admissions, and document requests.

Fletcher Jones demurred to Lewis's complaint, arguing (1) Lewis failed to adequately allege Fletcher Jones violated the Vehicle Leasing Act and (2) the statute of limitations barred the claims Fletcher Jones violated the Consumers Legal Remedies Act and engaged in unfair competition. Fletcher Jones also moved to strike portions of the complaint. On March 7, 2011, Fletcher Jones responded to Lewis's discovery requests.

Lewis filed an amended complaint rather than oppose Fletcher Jones's demurrer and motion to strike. Her first amended complaint alleged a single cause of action for violation of the Vehicle Leasing Act. Fletcher Jones again demurred, arguing the trial court should sustain the demurrer without leave to amend because the conduct Lewis alleged did not violate the Vehicle Leasing Act. The trial court issued a tentative ruling sustaining the demurer *without* leave to amend, but following the hearing the court took the demurrer under submission and later sustained it *with* leave to amend.

In early May 2011, Lewis and Fletcher Jones engaged in meet-and-confer discussions regarding Fletcher Jones's discovery responses. During those discussions, Lewis asked Fletcher Jones to extend the statutory deadline for her to file motions to compel further responses until after she filed her second amended complaint and the court ruled on Fletcher Jones's anticipated demurrer to that pleading. Lewis explained it would waste both time and money to litigate the discovery motions before the court ruled on the next demurrer because the court would likely deny Lewis further leave to amend if it sustained the demurrer. Lewis also explained she would be willing to settle the case if the court ruled she adequately alleged her claim. Fletcher Jones nonetheless refused to extend the statutory deadline and forced Lewis to prepare and file three motions to compel further responses or waive the right to seek the requested discovery.

On May 9, 2011, the day before Lewis filed her discovery motions, Fletcher Jones made a written demand that Lewis submit her claims to binding arbitration as the Lease required. This was the first time Fletcher Jones expressed a desire to arbitrate Lewis's claims, and its demand letter provided no justification for Fletcher Jones's failure to request arbitration earlier. Lewis rejected the demand on May 27, 2011.

Lewis filed her second amended complaint on May 23, 2011, again alleging a single cause of action for violation of the Vehicle Leasing Act. On June 2, 2011, Fletcher Jones filed a motion to strike Lewis's complaint and dismiss the action because Lewis failed to file the second amended complaint within the time the court ordered. Alternatively, Fletcher Jones moved to compel Lewis to submit her claims to binding arbitration as the Lease required. On June 22, 2011, Fletcher Jones filed a demurrer to the second amended complaint, arguing Lewis still had not alleged facts establishing a Vehicle Leasing Act violation and therefore the court should sustain the demurrer without leave to amend.

After continuing all pending motions to July 22, 2011, the court denied the motion to strike and the motion to compel arbitration. As to the motion to

compel arbitration, the court's minute order explained, "There is an arbitration agreement, but its provisions are procedurally and substantively unconscionable. [Citation.] Here, similar to Gutierrez, there is no effective way for Plaintiff to obtain a fee waiver or reduction. [¶] Moreover, Defendant has waived its right to compel arbitration by its conduct in delaying a demand for arbitration for an unreasonable period of time and repeatedly availing itself of the superior court forum to the substantial prejudice of the Plaintiff. [See *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 947 [118 Cal.Rptr.3d 613] [(*Burton*)].]" The court also overruled Fletcher Jones's demurrer to the second amended complaint and granted in part Lewis's discovery motions.

On August 5, 2011, the court signed an order prepared by Lewis's counsel denying the motion to strike and the motion to compel arbitration. The order expanded on the unconscionability and waiver rulings the court made in its minute order. As to the waiver ruling, the order explained, "Defendant waived the right to compel arbitration because: [¶] (i) Defendant sought multiple merits rulings from this Court; and [¶] (ii) Defendant delayed moving to compel arbitration for an unreasonably long period of time, causing substantial prejudice to Plaintiff, including forcing Plaintiff to defend against motions seeking merits ruling[s] from this Court and causing Plaintiff to spend over six months and over $40,000 in attorney fees, costs and expenses litigating this lawsuit in court."[1] Fletcher Jones timely appealed the trial court's ruling denying the motion to compel arbitration.

## II

### DISCUSSION

Fletcher Jones challenges the trial court's decision denying the motion to compel arbitration on two grounds. First, it argues the trial court erred in finding the Lease's arbitration provision unconscionable. Second, it argues the trial court erred in finding Fletcher Jones waived the right to arbitrate

---

[1] Fletcher Jones argues the portion of this order expanding on the court's unconscionability ruling improperly adds grounds the court did not specifically discuss at the hearing. Fletcher Jones does not challenge the portion of the order discussing the court's waiver ruling and therefore this argument is irrelevant to our analysis on the waiver issue. Nonetheless, Fletcher Jones fails to cite any authority precluding the trial court from signing an order expanding on the ruling it made at the hearing. To the contrary, "[c]ourts are not bound by their tentative rulings" and "a judge's comments in oral argument may never be used to impeach the final order." (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 [7 Cal.Rptr.3d 715]; see also *Halagan v. Ohanesian* (1967) 257 Cal.App.2d 14, 21 [64 Cal.Rptr. 792] ["It is settled that a trial judge's antecedent remarks or opinions, not embodied in his written findings or judgment, may not be used to attack or impeach the findings or judgment"].) Moreover, the trial court considered Fletcher Jones's objections to this order before signing it and therefore the order reflects the trial court's intended ruling.

Lewis's claims. Because we affirm the trial court's decision based on its waiver ruling, we need not consider whether the Lease's arbitration provision is unconscionable. (See *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 984 [72 Cal.Rptr.2d 43] (*Sobremonte*).)

A. *Standard of Review*

Whether a party waived the right to contractual arbitration is a factual question we review under the substantial evidence standard of review. (*Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337 [123 Cal.Rptr.3d 595] (*Augusta*); *Burton, supra,* 190 Cal.App.4th at p. 946.) The trial court's "determination of this factual issue, ' "if supported by substantial evidence, is binding on an appellate court." ' [Citations.] Only ' "in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court." ' [Citation.]" (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450 [110 Cal.Rptr.3d 104] (*Adolph*); see *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12 [111 Cal.Rptr.3d 335] (*Zamora*).)

We infer all necessary findings supported by substantial evidence (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1364 [96 Cal.Rptr.2d 295] (*Berman*); *Sobremonte, supra,* 61 Cal.App.4th at p. 992; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 214 [69 Cal.Rptr.2d 79]) and "construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance" (*Burton, supra,* 190 Cal.App.4th at p. 946).

Fletcher Jones does not address the standard of review applicable to a waiver finding. Instead, it focuses on the unconscionability finding and argues we should review the trial court's entire decision de novo. Unconscionability is generally a legal question we review under the de novo standard. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [98 Cal.Rptr.3d 743]; see also *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468–1469 [92 Cal.Rptr.3d 153].) As explained above, however, waiver is a factual question we must review under the substantial evidence standard.

B. *Legal Principles Governing Waiver of Contractual Arbitration*

■ Federal and state laws reflect a strong public policy favoring arbitration as " ' "a speedy and relatively inexpensive means of dispute resolution." ' " (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*); see also *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1745] (*AT&T Mobility*).) Nonetheless, federal and

California courts may refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including waiver. (9 U.S.C. § 2; see also Code Civ. Proc., § 1281; *St. Agnes*, at pp. 1194–1195.) Based on the public policy favoring arbitration, claims of waiver receive "close judicial scrutiny" and the "party seeking to establish a waiver bears a heavy burden." (*St. Agnes*, at p. 1195.)

"Although the statute[s and case law] speak[] in terms of 'waiver,' the term is used ' "as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." ' [Citation.] This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act. [Citations.]" (*Burton, supra,* 190 Cal.App.4th at p. 944; see also *Zamora, supra,* 186 Cal.App.4th at pp. 15–16 [federal law similarly uses the term waiver as a shorthand statement for the conclusion a contractual right to arbitration has been lost].)

■   Here, the Lease's arbitration provision states the Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs its application, but under the Federal Arbitration Act and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) courts apply the same standards in determining waiver claims. (*Zamora, supra,* 186 Cal.App.4th at p. 11). "Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes, supra,* 31 Cal.4th at pp. 1195–1196.) In *St. Agnes*, the California Supreme Court adopted as the California standard the same multifactor test employed by nearly all federal courts for evaluating waiver claims. (*Id.* at p. 1196; *Zamora*, at pp. 15, 21–22.)

Specifically, the *St. Agnes* court identified the following as "factors [that] are relevant and properly considered in assessing waiver claims": " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citations.]" (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) No one of these factors predominates and each case must be examined in context. (*Burton, supra,* 190 Cal.App.4th at pp. 944–945.)

Fletcher Jones contends the trial court applied the "wrong test" in evaluating Lewis's waiver claim because the court applied the "four (4) factor test" from our decision in *Burton* rather than the "five-factor test[]" the Ninth Circuit applied in *Cox v. Ocean View Hotel Corp.* (9th Cir. 2008) 533 F.3d 1114 (*Cox*). Fletcher Jones, however, fails to recognize both *Burton* and *Cox* applied the same six-factor test the California Supreme Court described in *St. Agnes*.[2]

In *Burton*, we specifically identified only four of the six *St. Agnes* factors because the remaining two clearly did not apply on the facts presented. (*Burton, supra*, 190 Cal.App.4th at pp. 944–945.) We nonetheless evaluated the waiver claim under the *St. Agnes* standard. (*Burton*, at pp. 944–945, 947–948.) In *Cox*, the Ninth Circuit quoted all six *St. Agnes* factors as the controlling standard. (*Cox, supra*, 533 F.3d at p. 1124.) We are at a loss to understand why Fletcher Jones describes *Cox* as applying a five-factor test. Regardless, even a cursory review of these two decisions reveals they applied the same *St. Agnes* standard to evaluate the claim that a party waived the right to contractual arbitration. The trial court here did not apply the wrong test.

C. *Substantial Evidence Supports the Trial Court's Finding Fletcher Jones Waived the Right to Arbitration*

The trial court found Fletcher Jones waived the right to arbitrate Lewis's claims by (1) delaying its arbitration demand for an unreasonable time period; (2) engaging in litigation on the merits of Lewis's claims and taking other steps inconsistent with the right to arbitration; and (3) prejudicing Lewis through the delays and litigation on her claims. These findings justify the court's ruling and substantial evidence supports each finding. Consequently, we must affirm the trial court's waiver determination.

1. Unreasonable Delay

██ " '[A] demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration. [Citations.]' " (*Sobremonte*,

---

[2] In *Cox*, the Ninth Circuit applied the six-factor *St. Agnes* test rather than the three-element test it has applied in other waiver cases (see, e.g., *United States of America v. Park Place Associates, Ltd.* (9th Cir. 2009) 563 F.3d 907, 921; *Brown v. Dillard's, Inc.* (9th Cir. 2005) 430 F.3d 1004, 1012) because it found California law governed the waiver issue (*Cox, supra*, 533 F.3d at p. 1124, fn. 7). Fletcher Jones does not argue we should apply the Ninth Circuit's three-element test and therefore we need not decide its applicability here. We simply note the Ninth Circuit's test represents the minority position among the federal circuits while the *St. Agnes* test is consistent with the majority position among the federal circuits. (*Zamora, supra*, 186 Cal.App.4th at pp. 21–22.)

*supra*, 61 Cal.App.4th at p. 992.) As the party seeking to compel arbitration, Fletcher Jones "had the responsibility to 'timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation.' [Citation.]" (*Id.* at pp. 993–994.) As we explained in *Burton*, "a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate." (*Burton, supra*, 190 Cal.App.4th at p. 945.)

Here, approximately four months elapsed from the time Lewis commenced this action until Fletcher Jones first expressed a desire to arbitrate Lewis's claims. After making its first arbitration demand, Fletcher Jones waited almost another month before filing its motion to compel arbitration. During this nearly five-month period, Fletcher Jones litigated the merits of Lewis's claims through multiple demurrers and motions to strike and participated in discovery without raising its right to arbitration.

We cannot fault the trial court's conclusion this delay was unreasonable under these circumstances. Indeed, other courts have found comparable delays to be unreasonable and justification for a waiver finding. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 556 [94 Cal.Rptr.2d 201] (*Guess?*) [less than four months between filing lawsuit and motion to compel arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228–1229 [249 Cal.Rptr. 544] (*Kaneko Ford*) [five and one-half months between filing lawsuit and motion to compel arbitration]; *Augusta, supra*, 193 Cal.App.4th at pp. 338–339 [six and one-half months between filing lawsuit and motion to compel arbitration]; *Adolph, supra*, 184 Cal.App.4th at pp. 1446, 1449, 1451–1452 [six months between filing lawsuit and demand for arbitration].)

Fletcher Jones does not dispute it knew about the Lease's arbitration provision when Lewis filed her lawsuit. Instead, Fletcher Jones contends the California Supreme Court's decision in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*) "categorically precluded" it from enforcing the arbitration provision "as a matter of law" until the United States Supreme Court's *AT&T Mobility* decision overturned *Discover Bank* on April 27, 2011. According to Fletcher Jones, *Discover Bank* "made all arbitration agreements in consumer contracts with class action waivers unenforceable" and therefore any effort to compel arbitration in this action would have been futile because the Lease's arbitration agreement included a class action waiver.[3] In Fletcher Jones's view, it did not unreasonably delay seeking to compel arbitration because it promptly did so after *AT&T Mobility* overturned *Discover Bank* and made the Lease's

---

[3] More specifically, Fletcher Jones argues *Discover Bank* made all class action waivers in arbitration agreements unconscionable and therefore its entire arbitration agreement was

arbitration agreement enforceable. We reject Fletcher Jones's futility argument because it relies on a clearly erroneous interpretation of *Discover Bank* as invalidating all arbitration agreements that include a class action waiver.

*Discover Bank* held an arbitration agreement's class action waiver is unconscionable when it operates as an exculpatory contract because all individual claims against the defendant are too small to provide a claimant incentive to bring an action in his or her name alone. (*Discover Bank, supra,* 36 Cal.4th at pp. 161–163; *Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 648 [114 Cal.Rptr.3d 449] (*Walnut Producers*).) As it explained, *Discover Bank* did not hold all class action waivers are unconscionable: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' [Citation.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank*, at pp. 162–163.)

Before Lewis filed her lawsuit, at least two Court of Appeal decisions held *Discover Bank* did not invalidate all arbitration agreements that included a class action waiver. In *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 844–845 [109 Cal.Rptr.3d 289] (*Arguelles-Romero*), the Court of Appeal found an arbitration agreement that included a class action waiver was not unconscionable because the value of the plaintiff's individual claim, which exceeded $16,000, was not "so small that individuals would . . . be [un]willing to spend the time and effort to pursue an individual claim for the amount, particularly when the prospect of an award of statutory attorney fees is also possible. [Citations.]" (*Id.* at p. 844.) Similarly, in *Walnut Producers*, the Court of Appeal found an arbitration agreement containing a class action waiver enforceable because the waiver did not act "as an exculpatory clause or unduly hinder[] plaintiffs from pursuing a legal remedy" due to the value of each individual claim—approximately $43,000. (*Walnut Producers, supra,* 187 Cal.App.4th at p. 649.)

Furthermore, *Discover Bank* only applied when a plaintiff filed a lawsuit alleging a class action claim. If the plaintiff did not allege a class action

---

unenforceable because the agreement included a "poison pill" provision severing the entire arbitration agreement from the Lease if the class action waiver "is found to be illegal or unenforceable."

claim, the *Discover Bank* rule did not apply even if the arbitration agreement at issue included a class action waiver. (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 714 [123 Cal.Rptr.3d 547] (*Chin*).)

Here, Fletcher Jones concedes the damages at issue include the nearly $19,000 in mileage fees, missed payments, and late charges it sought to collect from Lewis. Lewis's pleading also sought to rescind the entire Lease and recover attorney fees under the Vehicle Leasing Act. (See Civ. Code, § 2988.9.) At a minimum, the damages at issue exceeded the amount *Arguelles-Romero* found sufficient to render *Discover Bank* inapplicable. Moreover, none of the three pleadings Lewis filed sought to assert a class action claim, rendering *Discover Bank* inapplicable to this action even before *AT&T Mobility* overturned it. (*Chin, supra,* 194 Cal.App.4th at p. 714.)

Fletcher Jones offers no meaningful response to these authorities and facts showing *Discover Bank* did not prevent Fletcher Jones from seeking to enforce its right to arbitration before *AT&T Mobility* overturned *Discover Bank.* Fletcher Jones argues the $19,000 in mileage fees, missed payments, and late charges are insufficient to satisfy the jurisdictional limits for an unlimited civil action, but provides no explanation how that made *Discover Bank* applicable to the Lease's arbitration provision. Similarly, Fletcher Jones argues *Discover Bank* did not require the underlying action to be a class action, but cites no authority to support that contention or to otherwise respond to *Chin.*

In short, the only justification Fletcher Jones offers for its delay in seeking to compel arbitration is its belief the *Discover Bank* decision rendered the Lease's arbitration provision unenforceable as a matter of law. Authority existing when Lewis filed this action, however, establishes the *Discover Bank* decision did not invalidate the Lease's arbitration provision and therefore Fletcher Jones had no reasonable justification for delaying its efforts to compel arbitration. (*Sobremonte, supra,* 61 Cal.App.4th at p. 997 [rejecting argument the defendant could not have sought to compel arbitration earlier because the defendant based the argument on a clearly erroneous interpretation of the applicable law].)

## 2. Conduct Inconsistent with an Intent to Arbitrate

"A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver . . . ." (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951

[164 Cal.Rptr. 751] (*McConnell*).) "The trial court must . . . view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate." (*Id.* at p. 952, fn. 2.)

During the nearly five months it delayed filing its motion to compel arbitration Fletcher Jones litigated the merits of Lewis's claims through two demurrers and a motion to strike. It also coupled its motion to compel arbitration with a motion to strike Lewis's complaint and dismiss the entire action based on her failure to timely file the second amended complaint. Although Fletcher Jones did not propound any discovery, it responded to Lewis's four sets of discovery without raising the Lease's arbitration provision as a potential bar or limitation on Lewis's discovery rights. Moreover, Fletcher Jones forced Lewis to file three motions to compel further responses to the discovery because Fletcher Jones would not agree to extend the statutory deadline for the motions until after the trial court resolved all pleading issues.

The trial court's conclusion Fletcher Jones's conduct was inconsistent with an intent to arbitrate Lewis's claims is supported by other decisions that have found similar conduct inconsistent with an intent to arbitrate. (See, e.g., *Guess?, supra,* 79 Cal.App.4th at p. 558; *Adolph, supra,* 184 Cal.App.4th at p. 1451; *Kaneko Ford, supra,* 202 Cal.App.3d at pp. 1228–1229 [plaintiff engaged in conduct inconsistent with intent to arbitrate by filing action, forcing defendant to disclose legal strategies by answering complaint, and waiting over five months to assert right to arbitration]; cf. *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 783–784 [191 Cal.Rptr. 8, 661 P.2d 1088] (*Christensen*) [plaintiff engaged in conduct inconsistent with intent to arbitrate by filing a lawsuit and pursuing the litigation through two demurrers for the admitted purpose of obtaining verified pleadings revealing the defendants' legal theories].)

In *Guess?*, the Court of Appeal concluded the defendant engaged in conduct inconsistent with an intent to arbitrate by answering the complaint, responding to the plaintiff's discovery, participating in depositions the plaintiff noticed, and filing an unsuccessful motion to stay the action without asserting a right to arbitrate the plaintiff's claims. (*Guess?, supra,* 79 Cal.App.4th at p. 556.) As to the discovery, the *Guess?* court explained "it is immaterial that it was [the plaintiff], not [the defendant], that initiated the discovery. It is the manner in which [the defendant] responded that matters, and it was [the defendant's] response that was inconsistent with its present claim of a right to arbitrate." (*Id.* at p. 558.)

Similarly, in *Adolph,* we affirmed the trial court's finding the " 'defendant's conduct [was] inconsistent with an intent to arbitrate' " because the " 'defendant filed two demurrers, accepted and contested discovery request[s], engaged

in efforts to schedule discovery, [and] omitted to mark or assert arbitration in its case management statement.' " (*Adolph, supra,* 184 Cal.App.4th at p. 1451.)

Fletcher Jones contends an intent to waive its right to arbitration may not be inferred from its conduct in defending Lewis's lawsuit "through the preliminary procedural stages," including multiple demurrers and a motion to strike. Citing *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261] (*Doers*), Fletcher Jones argues it must engage in "*actual litigation of the merits of arbitrable issues*" to waive its right to arbitration. (Original italics.) Fletcher Jones fails to recognize it engaged in actual litigation of the merits by filing its demurrers challenging Lewis's claims.

■ Although *Doers* states "it is the judicial *litigation* of the merits of arbitrable issues which waives a party's right to arbitration," the court made that statement in the context of holding that a plaintiff did not waive the right to arbitration by merely filing a lawsuit. (*Doers, supra,* 23 Cal.3d at p. 188, original italics.) *Doers* did not address whether multiple demurrers amounted to judicial litigation of the merits of arbitrable issues. Later cases applying *Doers,* however, explain that litigating issues through demurrers may justify a waiver finding. For example, in *McConnell,* the Court of Appeal explained that finding a defendant waived the right to arbitration by litigating issues through demurrers or summary judgment motions "would be consistent with the law as spelled out in *Doers.*" (*McConnell, supra,* 105 Cal.App.3d at p. 951; cf. *Berman, supra,* 80 Cal.App.4th at p. 1371, fn. 16 [in dicta, the court explained "there can be no doubt Health Net would have been found to have waived its right to compel arbitration by engaging in multiple rounds of demurrers"]; *St. Agnes, supra,* 31 Cal.4th at p. 1201 [judicially addressing claims on their merits through pretrial procedures may support a waiver finding].)

Fletcher Jones concedes a motion for judgment on the pleadings would result in a "substantive ruling[] on the merits of the action." By making this concession, Fletcher Jones implicitly concedes a demurrer results in a substantive ruling on the merits because "[a] motion for judgment on the pleadings is equivalent to a general demurrer . . . ." (*Hopp v. City of Los Angeles* (2010) 183 Cal.App.4th 713, 717 [108 Cal.Rptr.3d 1]; see *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 274 [125 Cal.Rptr.3d 540] [" ' "A motion for judgment on the pleadings performs the same function as a general demurrer" ' "]; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690] ["A common law motion for judgment on the pleadings 'ha[s] the purpose and effect of a general demurrer' "].) Both

attack the complaint on the ground the plaintiff failed to allege sufficient facts to constitute a cause of action. (*County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 32 [121 Cal.Rptr.3d 151].) Here, Fletcher Jones filed several demurrers attacking Lewis's pleadings on the ground she failed to allege facts establishing Fletcher Jones violated the Vehicle Leasing Act.

Fletcher Jones cites *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 [98 Cal.Rptr.2d 836] (*Groom*) for its conclusion multiple demurrers were "not the equivalent of litigation on the merits" on the facts presented. (*Id.* at p. 1195.) In *Burton*, however, we criticized *Groom* and its conclusion multiple demurrers would not support a waiver of the right to arbitration because *Groom* failed to recognize the prejudice that may arise from multiple demurrers and the delay they cause. (*Burton, supra*, 190 Cal.App.4th at p. 948.) We again decline to apply *Groom*.[4]

Finally, Fletcher Jones argues its conduct in litigating Lewis's claims was not inconsistent with its right to arbitration because it had no right to arbitrate Lewis's claims until *AT&T Mobility* overturned *Discover Bank*. As explained above, Fletcher Jones bases this argument on a clearly erroneous interpretation of *Discover Bank* and we therefore reject the argument.

Because substantial evidence and established authority support the trial court's conclusion Fletcher Jones engaged in conduct inconsistent with the right to arbitration, we must find the trial court did not err in reaching that conclusion. (*Adolph, supra*, 184 Cal.App.4th at p. 1450 [trial court's waiver finding " ' "is binding on an appellate court" "if supported by substantial evidence" ' "].)

3. Resulting Prejudice

█ " 'In California, whether or not litigation results in prejudice also is critical in waiver determinations.' [Citation.] 'The moving party's mere participation in litigation is not enough; the party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration.' [Citation.]" (*Augusta, supra*, 193 Cal.App.4th at p. 340; see *St. Agnes, supra*, 31 Cal.4th at p. 1203.)

---

[4] Fletcher Jones failed to cite *Groom* or otherwise argue that its demurrers did not constitute litigation on the merits until the reply brief. Consequently, we may refuse to consider this argument and authority on the ground Fletcher Jones waived them. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1410, fn. 12 [130 Cal.Rptr.3d 714]; *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1216 [45 Cal.Rptr.3d 265].) We nonetheless address this issue and reject Fletcher Jones's argument on the merits.

"[C]ourts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes, supra,* 31 Cal.4th at p. 1204.) In *Burton,* we explained "a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient and cost-effective method to resolve disputes.' [Citation.]" (*Burton, supra,* 190 Cal.App.4th at p. 948.)

■     As Fletcher Jones points out, "courts will not find prejudice where the party opposing arbitration shows *only* that it incurred court costs and legal expenses." (*St. Agnes, supra,* 31 Cal.4th at p. 1203, italics added.) But courts " 'may consider . . . the expense incurred by that party from participating in the litigation process' " and the length of delay as factors bearing on whether the opposing party has been prejudiced. (*Sobremonte, supra,* 61 Cal.App.4th at p. 995.) "[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration as a ' " 'speedy and relatively inexpensive' " ' means of dispute resolution. [Citation.]" (*Burton, supra,* 190 Cal.App.4th at p. 948.)

Here, substantial evidence supports the trial court's finding Fletcher Jones prejudiced Lewis by delaying its arbitration demand and litigating her claims in court. Not only did Fletcher Jones's conduct force Lewis to spend six months opposing three demurrers and two motions to strike, it also forced Lewis to fully brief three motions to compel Fletcher Jones to provide complete discovery responses. Indeed, even after Fletcher Jones made its initial arbitration demand, it forced Lewis to file the discovery motions or risk waiving the right to obtain the requested discovery because Fletcher Jones refused to extend the statutory deadline. Lewis presented evidence showing Fletcher Jones's conduct compelled her to incur approximately $45,000 in attorney fees and nearly $1,000 in costs.

Other decisions have found sufficient prejudice to support a waiver based on a similar or even lesser degree of delay and litigation conduct. (See, e.g., *Guess?, supra,* 79 Cal.App.4th at pp. 556, 558 [sufficient prejudice caused by

less than four-month delay when the defendant answered, responded to discovery, participated in depositions the plaintiff noticed, and filed an unsuccessful motion to stay the action]; *Adolph, supra*, 184 Cal.App.4th at pp. 1451–1452 [sufficient prejudice caused by six-month delay in demanding arbitration during which the " 'defendant filed two demurrers, accepted and contested discovery request[s], engaged in efforts to schedule discovery, [and] omitted to mark or assert arbitration in its case management statement' "]; *Kaneko Ford, supra*, 202 Cal.App.3d at p. 1228 [sufficient prejudice caused by less than six-month delay during which the plaintiff filed the action, participated in settlement discussions, and obtained "information as to the legal strategies of [the defendant] by means of the latter's answer to the complaint"].)

■ Fletcher Jones cites cases applying the waiver doctrine where the party seeking arbitration waited until after a trial date was set to demand arbitration. (See, e.g., *Burton, supra*, 190 Cal.App.4th at p. 949; *Adolph, supra*, 184 Cal.App.4th at pp. 1451–1452.) But there are numerous cases finding a waiver in which no trial date was set. (See, e.g., *Christensen, supra*, 33 Cal.3d at pp. 780–781; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 834–840 [133 Cal.Rptr.3d 350]; *Berman, supra*, 80 Cal.App.4th at pp. 1361–1363; *Guess?, supra*, 79 Cal.App.4th at pp. 555–556; *Kaneko Ford, supra*, 202 Cal.App.3d at pp. 1222–1225.) Proximity to a scheduled trial is just one factor to be considered in making a waiver determination. (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) No one factor, however, predominates the waiver analysis (*Burton*, at pp. 944–945) and "[t]he trial court must . . . view the litigation as a whole . . ." (*McConnell, supra*, 105 Cal.App.3d at p. 952, fn. 2). Thus, depending on the particular facts, a trial court may conclude a party waived the right to arbitration either before or after the setting of a trial date. The issue on review is not necessarily at what stage in the litigation the trial court made its finding, but whether substantial evidence supports the court's decision.

■ The foregoing evidence and authority supports the trial court's determination Fletcher Jones prejudiced Lewis through its delay in seeking arbitration and its litigation of her claims in court. It is not enough the trial court potentially could have reached a different conclusion; rather, we may reverse the trial court's waiver finding only if the record establishes a lack of waiver as a matter of law. (*Adolph, supra*, 184 Cal.App.4th at p. 1450; *Zamora, supra*, 186 Cal.App.4th at p. 12.) We cannot reach that conclusion on the record before us and therefore must affirm the trial court's ruling.

## III

### DISPOSITION

The order is affirmed. Lewis shall recover her costs on appeal.

O'Leary, P. J., and Rylaarsdam, J., concurred.

On April 25, 2012, the opinion was modified to read as printed above.