Filed 3/8/24  Hardiman v. Sun Villaidence Opco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RENEE HARDIMAN et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>SUN VILLAIDENCE OPCO, LLC et al.,<br><br>Defendants and Appellants. | F085661<br><br>(Super. Ct. No. VCU289407)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Beach Law Group, Thomas E. Beach and Eligio J. Luevanos for Defendants and Appellants.

Robins Cloud, Brian K. Teets, Jr. and Manuel D. Balam for Plaintiffs and Respondents.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Franson, J. and Smith, J.

Appellants Sun Villaidence Opco, LLC, Providence Group of California, LLC, and Terri Tate (hereinafter collectively referred to as "SVO"), challenge the trial court's denial of their motion to compel arbitration in an action brought in the Tulare County Superior Court by the heirs of Charles Hardiman. Following our review of the record provided to this court and the relevant legal authorities, we affirm.

## FACTUAL[1] AND PROCEDURAL SUMMARY

Charles Hardiman became a resident of a skilled nursing facility operated by SVO in June 2020. Hardiman was transferred to that facility from a hospital to obtain care and rehabilitation following the amputation of his lower left leg. In addition to a variety of other health concerns, Hardiman was already suffering from edema, a condition that commonly occurs following an amputation. The FAC alleged the existence of edema would prevent Hardiman from being fitted for a prosthetic leg. The FAC further alleged neglect in Hardiman's care while at the facility.

In July 2020, Hardiman informed his wife during a phone call that he had tested positive for COVID-19, before abruptly ending the call. When his wife finally reached a nurse at the facility, she was informed Hardiman was transferred to a hospital after exhibiting "complications." While at the hospital, tests revealed Hardiman had likely suffered a stroke while a patient at the facility. Hardiman's family was allegedly never officially informed by the facility about his testing positive for COVID-19 or that he had suffered a stroke. Hardiman's heirs later alleged that the lack of appropriate treatment provided by the facility contributed to Hardiman's death in August 2020.

In August 2021, Hardiman's heirs sent SVO an intent to sue pursuant to Code of Civil Procedure[2] section 364. An attorney representing SVO appeared to acknowledge

---

[1]    The presentation of facts in this summary is taken from the first amended complaint (FAC) that is part of the record on appeal and the trial court's order on the motion to compel arbitration.

[2]    All further statutory references are to the Code of Civil Procedure.

2.

this potential lawsuit in a letter to the Hardiman's heirs in September 2021. In November 2021, Hardiman's heirs filed a complaint alleging wrongful death and elder abuse.[3] In May 2022, SVO participated in a case management conference and filed a case management statement demanding a jury trial, indicating fees for a jury would be posted, providing an estimated length for trial, and representing they planned to participate in written discovery, depositions, and expert discovery. Thereafter, a demurrer to the complaint was sustained in June 2022, resulting in the filing of the FAC in July 2022. A motion to strike portions of the FAC was granted in October 2022, subject to a requirement the parties meet and confer on the language that would be stricken. However, before such an agreement could be reached, SVO filed a motion to compel arbitration in December 2022. Attached to the motion to compel was a copy of a standard admission agreement and a confidential arbitration agreement, both electronically signed by Hardiman on July 14, 2020.

The trial court denied the motion to compel arbitration on January 10, 2023, and adopted its tentative ruling as its final order. A notice appealing this denial of the motion to compel arbitration was filed on January 24, 2023.

## DISCUSSION

SVO appeals from the trial court's order denying its motion to compel arbitration. Such orders are directly appealable pursuant to section 1294, subdivision (a). However, before addressing this issue we turn to the adequacy of the record that has been provided by SVO in this appeal.

### I. The Adequacy of the Record on Appeal

The most fundamental rule of appellate review is that a judgment challenged on appeal is presumed correct. (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12.) We,

---

[3] The original complaint filed in this action is not part of the record on appeal. The first pleading we have been provided is the FAC.

therefore, indulge every presumption to uphold a judgment on appeal. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) To counter these presumptions, an appellant must affirmatively demonstrate an error was made by the trial court, as any uncertainty in the record will be resolved against the appellant. (*Ibid.*) A record of the lower court proceedings is required to both support allegations of claimed error, and to facilitate an appellate court's review of those claims. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498–499.) Where an appellant fails to supply an adequate record for the court's review, the claim will fail. (*People v. Whalen* (2013) 56 Cal.4th 1, 85 [disapproved on other grounds in *People v. Romero and Self* (2015) 62 Cal.4th 1].)

The record provided to this court lacks documents on file with the trial court that could have assisted our review of the totality of the circumstances relevant to the issue of waiver. We were not provided the original complaint, the moving or opposition papers to the demurrer of that original complaint, or the order from the court granting the demurrer to the original complaint. These documents could have enlightened this court as to the complexity of the issues presented in the earlier demurrer, and the concerns of the trial court when ordering language stricken from the FAC. As explained below, the lack of this information impacts our analysis of the primary question raised in this appeal, specifically, the validity of the trial court's conclusion that SVO waived its right to compel arbitration.

## II.    Was the Right to Compel Arbitration Waived?

### A.    Applicable Law

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.) However, because arbitration agreements are not self executing, a party who intends to pursue arbitration must take " ' "active and decided steps to secure that right." ' " (*Fleming Distribution Company v. Younan* (2020) 49 Cal.App.5th 73, 80–81.) While a written agreement to

4.

arbitrate is generally enforceable, "a petition to compel arbitration will be denied when the right has been waived by the proponent's failure to properly and timely assert it." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557, citing §§ 1281, 1281.2, subd. (a).)

Both state and federal law express "a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).) Because such waivers are not lightly inferred, a "party seeking to establish a waiver bears a heavy burden of proof." (*Ibid.*) Among the factors a party opposing a motion to compel arbitration must establish, and a trial court must consider are:

> " ' "(1) whether the [party seeking arbitration has acted in a manner] inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

Whether or not a party waived the right to compel arbitration is a factual question we review using a substantial evidence standard of review. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 (*Lewis*).) If a trial court's finding on this factual issue is supported by substantial evidence, the appellate court is bound by that finding. (*Ibid.*) It is only when the record before the trial court shows there was no waiver *as a matter of law*, will the appellate court reverse a finding of waiver made by the trial court. (*Ibid.*, emphasis added.) " 'A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial

5.

procedures, may in many instances justify a finding of waiver ….' " (*Id*. at p. 448.) The trial court has an obligation to view the actions taken in litigation as a whole and decide if those actions are inconsistent with an intent to arbitrate. (*Id*. at p. 449.)

For instance, in *Lewis*, *supra*, 205 Cal.App.4th 436, the plaintiff served the defendant with a complaint, then days later served several requests for written discovery. In response, the defendant filed a motion to strike and demurred to the complaint. The plaintiff filed a first amended complaint instead of opposing the motion to strike and demurrer. After the defendant demurred to the FAC, the trial court sustained this demurrer with leave to amend. When the plaintiff met with the defendant to meet and confer on the responses to the discovery that was due, the defendant refused to agree to any postponement for a discovery motion before the trial court ruled on yet another demurrer. The *Lewis* court agreed the defendant waived its right to insist on arbitration. The trial court noted, "[d]uring this nearly five-month period, [the defendant] litigated the merits of Lewis's claims through multiple demurrers and motions to strike and participated in discovery without raising its right to arbitration," and that " 'a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate.' " (*Id*. at p. 446.)

In another case addressing the issue of waiver, an appellate court stated it was proper to consider whether the expenditure of time and money deprived the plaintiff of the true benefits of arbitration. (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1049.) In *Bower*, the defendant not only engaged in substantive discovery, both responding and propounding, but also engaged in significant settlement discussions. (*Id*. at pp. 1039–1040.) While the decision in *Bower* was partially decided on a finding of prejudice, case law has since concluded that prejudice is not a necessary finding that must be made before denying a motion to compel arbitration. Specifically, when a contract specifies that the Federal Arbitration Act (FAA) applies, as this one does, recent case law has held whether a party has waived the right to arbitrate is a matter of

federal, not state, law. (*Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.) The United States Supreme Court recently resolved a conflict among circuit courts holding that instead of requiring a showing of prejudice to the party opposing the motion to compel, a court should focus on the actions of the party holding the right to compel arbitration. (*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 1713.)

Consistent with these holdings, we will therefore focus on the essential question of whether, " 'under the totality of the circumstances,' " SVO acted inconsistently with the right to compel arbitration. (*Davis v. Shiekh Shoes, LLC*, *supra*, 84 Cal.App.5th at p. 964.)

### B.    Analysis

When explaining its decision to deny the motion to compel arbitration, the trial court noted:

> "[T]here is no answer on file and no listing of arbitration as an affirmative defense. Rather, [d]efendants demurred and moved to strike, obtained a favorable ruling permitting leave to amend, moved a second time to strike and obtained a second favorable ruling narrowing the avenue of recovery of attorneys' fees and punitive damages. Plaintiff argues that the value of arbitration has been diminished because [d]efendants have litigated the merits of the case outside the arbitration forum. To the [c]ourt, [d]efendants have improperly used the [c]ourt 'as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.' "

During the hearing on the motion to compel arbitration, the trial court added on the record:

> "[A]t the case management conference in May of 2022, I mean, there's one-word reference to arbitration, but you demanded a jury. You set the case for a jury trial. And nobody said we're going to file a motion and nobody did file a motion until November.
>
> [¶] … [¶]
>
> "[I]n the [c]ourt's analysis, I don't feel discovery is dispositive. I think it's—again, it's the machinery of litigation. It's not necessarily

7.

prejudice. It's fully participating in the trial. And this is a case that was filed in November of 2021. We set it for trial in May of 2022. And now we're three months from trial.[4] And I think that where some of the cases refer to extended silence on the issue of arbitration gets us to a totality of circumstances that shows waiver."

In this case, SVO was aware Hardiman's heirs intended to file a lawsuit in August 2021. The initial complaint was then filed in November 2021, but was not served on SVO until March 2022. Again, before responding to the complaint, SVO participated in a case management conference and filed a statement in May 2022 indicating an intent to request a jury trial and engage in discovery. After filing at least two motions to strike portions of the original complaint and the FAC, as well as demurring to both, SVO finally filed its motion to compel arbitration in December 2022, approximately 16 months[5] after becoming aware Hardiman's heirs intended to file a lawsuit. The motion was filed while the parties were still engaged in negotiations addressing the language that would be stricken from the FAC before a second amended complaint was filed. The record lacks clarity on the question of whether Hardiman's heirs were aware of the confidential arbitration agreement or that it was signed by Hardiman electronically, while he was a resident at SVO's facility. Furthermore, while a declaration attached to the motion to compel authenticates this arbitration agreement through a person "familiar with the process through which residence and service agreements, and arbitration agreements, are presented to residents," there is no declaration from any person who witnessed Hardiman review and/or execute an electronic signature on this document.[6]

---

[4]    The original trial date set for this case was in March 2023.

[5]    Our calculation of 16 months is calculated from the period between the intent to sue letter sent by Hardiman's heirs to SVO. The court cites a nine-month period from the time the complaint was served to the filing of the motion to compel.

[6]    In fact, the signature on the agreements from an employee of the facility bares a timestamp earlier than the one appearing when Hardiman signed the documents.

8.

SVO relies on the fact that in many cases finding waiver, the discovery process has been utilized before a motion to compel was filed. However, while discovery is certainly part of the litigation process, case law has yet to hold that the use of discovery is a necessary factor before a court can find the right to compel arbitration has been waived. When reviewing the *St. Agnes* test, we note the use of discovery is mentioned as an example of an " 'important intervening step[],' " not a necessary intervening step. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

Based on the record that is before this court, we cannot conclude with confidence there was no waiver as a matter of law. (See *Lewis*, *supra*, 205 Cal.App.4th at p. 443.) Instead, when considering the *St. Agnes* criteria, sufficient evidence supports the findings that SVO's actions in challenging the complaint and indicating they wanted to pursue a trial, were not only inconsistent with the right to arbitrate, but also that SVO substantially employed the machinery of litigation. (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) Rather than pursuing arbitration from the outset, SVO filed two separate responses to two different versions of the complaint which apparently narrowed the potential of recovering attorneys' fees and punitive damages and diminished the value of arbitration for the Hardiman heirs. In addition, relevant to the third criteria listed in the *St. Agnes* test, by waiting until December 2022 to file the motion to compel, SVO actually filed the motion just three months before the scheduled trial date. (*Ibid*.)

Because we are bound by the substantial evidence test here, we cannot draw inferences based on "mere speculation or conjecture," but only from evidence that is " 'reasonable …, credible, and of solid value.' " (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) The trial court in this case considered the totality of the circumstances then stated, "the value of arbitration has been diminished because [d]efendants have litigated the merits of the case outside the arbitration forum." Based on the evidence in the record before us, we are unable to reject this conclusion by

9.

the trial court and cannot infer there was no waiver of the right to arbitration as a matter of law.

## **<u>DISPOSITION</u>**

The order denying the motion to compel arbitration is affirmed.  Respondents are awarded their costs on appeal.