Filed 10/29/15  Vaca v. Howard CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANA VACA, | B256065 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC436404) |
| v. | |
| NEIL M. HOWARD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Law Office of Nick A. Alden, Nick A. Alden and Aleksey Sirotin for Plaintiff and Appellant.

Philip D. Dapeer for Defendant and Respondent.

Appellant Ana Vaca sued her former attorney, Neil Howard, alleging that Howard breached his fiduciary duties and committed professional negligence. Six months after the complaint was filed, Howard filed a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2.[1] The trial court granted the petition, and we denied Vaca's petition for a writ of mandate. (*Vaca v. Superior Court of Los Angeles County* (June 1, 2011, B232417) [nonpub. order].) Vaca did not participate in the arbitration proceedings, which culminated in an order granting Howard's motion for summary judgment. Approximately two years after the arbitrator issued his order, Howard filed a petition to confirm the award pursuant to section 1285. Vaca timely appealed from the court's grant of that petition.

Vaca contends that the trial court erred by granting the petitions to compel arbitration and confirm the award. She argues that the trial court should have denied the petition to compel arbitration because she did not knowingly agree to arbitrate, any purported agreement to arbitrate was unconscionable, and Howard waived his right to arbitrate by participating in the litigation before filing the petition to compel arbitration. Vaca also argues that the trial court should have denied the petition to confirm the arbitration award because the award lacked a legal basis, permitted Howard to benefit inequitably from the negligence of Vaca's bankruptcy attorney, and validated her claims that she could not afford to participate in arbitration.

We reject Vaca's contentions and conclude that the court did not err in granting either petition. With regard to the petition to compel arbitration, we conclude that Vaca and Howard entered into a valid agreement to arbitrate that was not unconscionable. We further conclude that Vaca forfeited her claim of waiver by failing to present it below. With regard to the petition to confirm the award, we agree with Howard and the trial court that it would be improper to review the substantive merits of the arbitrator's award.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Vaca hired Howard in 2007 to represent her and her eleven siblings in a suit alleging the wrongful death of her mother. Howard entered into a retainer agreement with Vaca and her brother, Enrique Vaca (Enrique), on April 10, 2007. Vaca does not speak or read English and has only a third-grade education in Spanish. Enrique and Vaca signed a Spanish translation of the retainer agreement, which a court-certified interpreter has attested is a proper translation.

The 16-paragraph retainer agreement contained an arbitration provision. That provision, Paragraph 11, stated in full, with emphases: "The CLIENTS and the ATTORNEY agree that any controversy or claim (including but not limited to claims for legal malpractice, breach of fiduciary duty, and attorney fee disputes) arising out of or relating to this agreement, or breach of this AGREEMENT, shall be settled by binding arbitration. Binding arbitration means that neither the ATTORNEY nor the CLIENT may appeal the arbitration award, except for those reasons set forth under Section 1286.2 of the *Code of Civil Procedure*. The arbitration shall be administered by Judicate West. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. In the event of arbitration, the CLIENTS and the ATTORNEY agree that the above referenced controversy shall be submitted to one arbitrator selected by the CLIENTS and the ATTORNEY. If the CLIENTS and the ATTORNEY are unable to select an arbitrator, Judicate West shall provide the names of three arbitrators. The CLIENTS and the ATTORNEY will then have the right to eliminate one arbitrator. If the CLIENTS and the ATTORNEY eliminate two arbitrators, the remaining arbitrator will be appointed the arbitrator. If the CLIENTS and the ATTORNEY eliminate the same arbitrator, and remains two arbitrators, then the arbitrator at the top of the list shall be appointed as the arbitrator. All costs associated with the arbitration shall be borne equally by the CLIENTS and the ATTORNEY. *By signing this AGREEMENT, the CLIENTS acknowledge, that CLIENTS are given the opportunity to consult with independent counsel, concerning any provisions of this agreement, in particular with respect to provisions set forth in this paragraph. The CLIENTS acknowledge that he*

3

*may cancel or reject this agreement within ten (10) days from the date of signing this AGREEMENT.*"

Howard did not discuss the arbitration provision with Vaca. His assistant, Frank Maldonado, a fluent Spanish speaker, gave Vaca and Enrique the retainer agreement on April 10, 2007. [2] Maldonado orally advised Vaca and Enrique in Spanish that they had the option to review the agreement and return it by mail. Vaca and Enrique instead reviewed the agreement in front of Maldonado and signed and returned the Spanish version the same day. Maldonado gave Vaca and Enrique each their own copy of the signed agreement. Vaca never asked Maldonado any questions about the agreement or the arbitration provision.

Howard negotiated a $1.275 million settlement in the wrongful death action. Howard deducted his contingency fee, issued Vaca two checks totaling $886,223.52, and directed her to settle the matter with and distribute the proceeds among her siblings. Vaca distributed $140,000 of the settlement proceeds to Enrique and gave $50,000 to her sister, Laura Garcia. Vaca invested most if not all of the remaining settlement proceeds in her family residence, which she allegedly purchased with cash.

Enrique disputed Vaca's distribution of the settlement proceeds. He enlisted the assistance of Howard, who filed a misappropriation suit against Vaca, his former client. Although the suit was filed on behalf of all eleven of Vaca's siblings, nine of them

_____

[2] Vaca suggests that Maldonado's declaration should not be considered because it "belatedly and mysteriously materialized with Howard's Reply papers, and was not submitted with the moving papers." However, it is unclear from the record whether she raised this objection in the trial court, and, even if she did, the trial court expressly overruled all objections raised in conjunction with Howard's petition to compel. We accordingly consider Maldonado's declaration, as well as the declarations of Vaca and her attorney to which Howard objected below. The record does not reflect any rulings on the objections Howard made to the declarations Vaca submitted in opposition to his petition to confirm the arbitration award, nor on Vaca's request that the court take judicial notice of previous filings in the case and in Vaca's bankruptcy proceedings. For purposes of this appeal, we treat the request for judicial notice as granted (*Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918-919) and the objections as overruled (cf. *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480, fn. 7.)

dismissed their claims before trial and a tenth, Garcia, denied retaining Howard as her attorney and represented herself at trial. Vaca also represented herself at trial, after the attorney she retained allegedly absconded with her retainer and withdrew from the case. The court ruled in favor of Enrique and Garcia, awarding them a total of approximately $400,000. Vaca, represented by another attorney, appealed the ruling. (*Vaca v. Vaca* (B219105).) The appeal was dismissed pursuant to California Rules of Court, rule 8.140(b) for failure to designate the record on appeal. (*Vaca v. Vaca* (Oct. 28, 2009, B219105) [nonpub. order].)

Vaca retained her present counsel, Nick Alden, and on April 26, 2010 filed the instant suit against Enrique, Garcia, Howard, and the two attorneys who allegedly mishandled the misappropriation lawsuit and appeal.[3] Vaca alleged that Howard breached his fiduciary duties to her and committed professional negligence by, among other things, delegating distribution of the settlement proceeds to her, filing suit against her, and allegedly eliciting false testimony from Enrique and Garcia during the trial of that suit.

By letter dated September 21, 2010, Howard demanded that Vaca arbitrate her claims against him pursuant to the arbitration provision of the April 10, 2007 retainer agreement. After receiving no response from Vaca, Howard filed a petition to compel arbitration on October 15, 2010. He subsequently filed a special motion to strike under section 425.16, the anti-SLAPP statute, on October 29, 2010.[4] It doesn't appear that's true, as the file stamp on the petition to compel arbitration is October 15, 2010, which certainly predates the November 30, 2010 resolution of the anti-SLAPP motion. The

---

[3] Alden also represents Vaca in a separate, subsequently filed lawsuit against Howard and Sheldon Lewenfus. (L.A. Superior Court Case No. BC479045). In that suit, Vaca alleges that Howard and Lewenfus conspired to obtain Vaca's home through a fraudulent sheriff's sale, which Howard initiated to enforce the judgment against Vaca in the misappropriation action. In an unpublished opinion, we reversed the trial court's grant of Lewenfus's special motion to strike in that case. (See *Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

[4] SLAPP is an acronym for Strategic Lawsuit Against Public Participation.

5

anti-SLAPP motion itself does not appear in the record and the minute order denying it does not indicate when it was filed, but the case summary date lists a "Motion to Strike" filed on October 29, 2010. The October 29, 2010 date is consistent with the November 30, 2010 hearing date. See § 425.16, subd. (f) [requiring a hearing not more than 30 days after service of an anti-SLAPP motion].)~ Howard also filed a demurrer, though it is unclear from the record when that filing was made.

While Howard's petition to compel arbitration, anti-SLAPP motion, and demurrer were pending, Vaca filed for Chapter 7 bankruptcy on November 24, 2010. Vaca did not disclose her claims against Howard in her bankruptcy filing. Vaca alleges this omission was due to the negligence of her bankruptcy attorney, who is now disbarred.

The trial court heard and denied Howard's anti-SLAPP motion on November 30, 2010. The court also overruled Howard's demurrer, which was predicated on the same grounds as his anti-SLAPP motion, during the hearing. The court further noted that Howard and another defendant had filed "a number of discovery motions," which it removed from its calendar in light of section 425.16, subdivision (g), which stays discovery during the pendency of an anti-SLAPP motion. The court did not consider the petition to compel arbitration.

After two stipulated continuances, the court heard Howard's petition to compel arbitration on February 22, 2011. In a subsequent order, the court expressly overruled all evidentiary objections pertaining to the motion to compel and ordered Vaca's claims against Howard severed and arbitrated. Neither Vaca nor Howard requested a statement of decision, and the court's tentative ruling does not appear in the record. The minute order granting Howard's petition to compel does not explain the court's reasoning for doing so.

Vaca did not participate in the arbitration proceedings. The arbitrator heard Howard's unopposed motion for summary judgment on September 12, 2011. The arbitrator granted the motion, concluding that Vaca's failure to disclose her claims against Howard in her bankruptcy filings judicially estopped her from pursuing those claims against him. The arbitrator served notice of his decision on September 14, 2011.

6

Vaca did not petition to correct or vacate the award, and Howard did not immediately petition to confirm it. On July 11, 2012, ten months after the award was issued, Vaca filed an ex parte application to reopen her bankruptcy proceedings to add the previously omitted claims against Howard to her petition. The bankruptcy court granted her request on July 30, 2012. Howard moved to vacate the order reopening Vaca's bankruptcy petition because he had not been properly served. The bankruptcy court denied the motion without prejudice.

On July 19, 2013, the trial court issued an order to show cause "re: defendant, Neil Howard's failure to appear and status conference re: setting of any motion for confirmation of arbitration award." Howard filed a petition to confirm the arbitration award three months later, on October 22, 2013. Vaca opposed the petition. The court granted the petition on February 4, 2014, explaining in a written ruling that it could not and would not revisit the substantive merits of the arbitrator's decision. The court entered judgment confirming the award on March 10, 2014, and Vaca timely appealed on May 2, 2014.

## DISCUSSION

### I. Order Compelling Arbitration

#### A. Appealability

Vaca contends that neither the petition to compel arbitration nor the petition to confirm the award should have been granted. Her notice of appeal, which she filed after the petition to confirm was granted, indicates that she is appealing from the "[j]udgment confirming arbitration award, under Code of Civil Procedure section 1294." Howard suggests that Vaca's omission from her notice of appeal of any mention of the petition to compel arbitration precludes her from challenging the court's order granting that petition. We disagree.

Although an order denying a petition to compel arbitration is directly appealable (§ 1294, subd. (a)), an order granting such a petition is not. (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94). An order granting a petition to compel arbitration is reviewable on appeal from a subsequent judgment on the award, however.

7

(*Id.* at p. 94; see also §§ 1294 & 1294.2.)  "Both as a general rule and with specific reference to arbitration, appellate review following a final judgment properly encompasses 'any intermediate ruling, proceeding, order or decision' of the trial court that 'involves the merits' or 'necessarily affects' the judgment or 'substantially affects the rights of a party. . . .' (Code Civ. Proc., §§ 906, 1294.2; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 2:261, p. 2-118.)"  (*Abramson v. Juniper Networks, Inc.*  (2004) 115 Cal.App.4th 638, 648-649.)  The notice of appeal need not mention specifically these intermediate rulings to preserve them for appellate review.  (See *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531.)  Vaca properly preserved her challenges to the order granting Howard's petition to compel arbitration.

### B. Analysis

#### 1. Legal Framework

California courts have uniformly acknowledged that there is a strong public policy in favor of arbitration.  (E.g., *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25-26;  *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-972; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)  This public policy is embodied in Title 9 of the Code of Civil Procedure (§ 1280 et seq.), which sets forth a comprehensive statutory scheme regulating private arbitration.  (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 9.)  Under that scheme, "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  (§ 1281.)  Thus, when a party files a petition alleging the existence of a written agreement to arbitrate a controversy and a party to that agreement refuses to arbitrate the controversy, the court "shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:  [¶]  (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for revocation of the agreement."  (§ 1281.2, subds. (a) & (b).)

8

### 2.        Waiver

Vaca contends that the court should have denied the petition to compel arbitration under section 1281.2, subdivisions (a) and (b).  She argues that Howard waived his right to compel arbitration (§ 1281.2, subd. (a)) by engaging in litigation conduct inconsistent with an intention to arbitrate.  She asserts that before filing his motion to compel arbitration, Howard noticed her deposition four times, filed and renewed a motion to compel her deposition, propounded written discovery, and filed an anti-SLAPP motion— a course of action she characterizes as "testing the water before taking the swim." (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1980) 105 Cal.App.3d 946, 951.)

The fact that the party petitioning for arbitration has participated in litigation, short of a determination on the merits, does not by itself constitute a waiver, however. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375 (*Iskanian*).)  Generally, the determination of waiver is a question of fact for the trial court that we review for substantial evidence.  (*Ibid.*)  The Supreme Court has articulated, and recently reaffirmed in *Iskanian*, *supra*, 59 Cal.4th at p. 375, six factors relevant to the inquiry:  "'"'(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.'"'  (*St. Agnes Medical Center* [*v. PacifiCare of California* (2003)] 31 Cal.4th [1187,] 1196, [ ].)"  (*Iskanian*, *supra*, 59 Cal.4th at p. 375.)

We need not weigh these factors here, as we agree with Howard that Vaca forfeited her waiver argument by neglecting to assert it properly below.  "'"'[I]t is

9

fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court" and "[g]enerally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]"' [Citation.]" (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399.)

Vaca claims she presented the argument to the trial court, but she cites only to the introduction of the memorandum of points and authorities she filed below. In that introduction, she recited Howard's litigation conduct and then averred, "After Howard realized that things are not going his way in the Superior Court, he decided to have the Court reference [*sic*] the case to arbitration. '[a] [*sic*] defendant may not participate in litigation in such a manner as to constitute 'testing the water before taking the swim.' (*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*[, *supra*, ] 105 Cal.App.3d [at p.] 951 [164 Cal.Rptr. 751].)" This vague allusion to waiver is insufficient to present the argument below or preserve it for appeal. Vaca did not mention section 1281.2, subdivision (a) anywhere in her memorandum, did not include waiver as a formal argument, and did not raise the issue at the hearing on the petition. Determining whether Howard's actions were sufficient to constitute waiver is a fact-intensive determination, and by failing to adequately address the issue below, Vaca deprived the trial court of the opportunity to make any relevant findings. We will not make those fact determinations for the first time on appeal. Vaca cannot raise the issue of waiver for the first time in this court.

### 3. Agreement to Arbitrate

Vaca has preserved her contention under section 1281.2, subdivision (b) that no valid agreement to arbitrate existed. She argues that "the evidence showed that the alleged agreement to arbitrate between Appellant and Respondent was not 'openly and fairly entered into' by Appellant," and further asserts that whether an agreement to arbitrate exists "turns on the determination whether there was consent to arbitration by both parties." Consent was lacking here, Vaca claims, because she does not speak or read

10

English and has limited reading skills in Spanish, and Howard did not discuss the arbitration provision with her.

Whether the parties have mutually consented to a contract is a question of fact. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141.) Vaca contends in her opening brief that we should review this question de novo, but argues in her reply brief that "the evidence before the trial court was not sufficiently substantial to indicate that Appellant 'openly and fairly entered into' an arbitration agreement with Respondent." Vaca's latter argument is the better one. To the extent the trial court's order on a petition to compel arbitration is based upon the resolution of disputed facts, we review only for substantial evidence. We conduct a de novo review only where the decision below turned on a question of law. (*Robertson v. Health Net of California* (2005) 132 Cal.App.4th 1419, 1425.)

Here, the record indicates only that the petition to compel arbitration was granted; we do not know the basis of the court's decision. Vaca's contention that she did not consent to arbitrate is fundamentally a factual one, however. Our review is therefore confined to whether the court's order granting the petition—and implicit conclusion that the parties consented to arbitrate—is supported by substantial evidence. Substantial evidence is evidence that a reasonable person "might accept as adequate to support a conclusion," *(Estate of Teed* (1952) 112 Cal.App.2d 638, 644), or evidence "that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651. ) If there is substantial evidence which supports the disputed finding, we will uphold the judgment even though substantial evidence to the contrary also exists and the trier of fact might have reached a different conclusion had it believed other evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, and the party opposing the petition to compel arbitration bears the burden of proving any fact necessary to its defense by a preponderance of the evidence. (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 972.) Howard as the petitioning party therefore had

11

the burden of proving the existence of a valid arbitration agreement.  He presented evidence that Vaca signed an arbitration provision that was translated accurately into her native language, as well as evidence indicating that Vaca refused to arbitrate the dispute. (See § 1281.2.)  This was substantial evidence that an agreement to arbitrate existed.  So too was Howard's reply evidence, a declaration from his assistant Frank Maldonado in which Maldonado attested that after explaining to Vaca in Spanish that she had the option to review the contract and return it by mail, he observed Vaca read through the entire agreement, sign it, and return it to him.  The court was entitled to credit this evidence over the evidence Vaca submitted, a declaration entitled "Declaration on Ana Vaca" which began with the statement "I, Maria Hernandez, declare as follows."  (*Sic.*)  In that declaration, Vaca declared that she completed third grade in Mexico, does not speak, read, or write English, and did not understand the contract she signed.[5]  She further averred that Howard never discussed arbitration with her and that she would have objected to an arbitration provision if he had.

Vaca contends that her limited literacy skills precluded her from knowingly agreeing to arbitrate disputes with Howard.  This argument is not persuasive. "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to consent to all its terms, and cannot escape liability on the ground that he or she has not read it. If the person cannot read, he or she should have it read or explained."  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 118, p. 157; see also *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163.)  Maldonado advised Vaca in Spanish that she could take some time to review the retainer and return it by mail.  The arbitration provision of the agreement further indicates, in bold italics, that the signing potential clients "are given the opportunity to consult with independent counsel, concerning any provisions of this agreement, in particular with respect to provisions set forth in this paragraph," and further affords the clients the option to cancel or reject the agreement within 10 days of signing it.  There is no evidence in the record

_____

[5] The declaration includes a signature by an interpreter stating that he provided a Spanish translation of the declaration for Vaca before she signed it.

12

suggesting that Vaca was unable to read these straightforward provisions or understand Maldonado's advice.

Vaca also argues that Howard "had to submit evidence that he discussed the arbitration clause with Appellant, so that she could knowingly consent to such an agreement." However, Vaca has not cited to any authority holding that a lawyer has a sua sponte duty to discuss an arbitration provision with a prospective client or an obligation to submit evidence of such a discussion to the trial court in connection with a petition to compel arbitration.[6]

The facts and issues in this case are distinguishable from those of the cases she does cite. In *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 993, the arbitration provision was inconspicuous and the contractual nature of the retainer agreement was not obvious. Here, the arbitration provision was contained in a document entitled "RETAINER AGREEMENT," was in the main body of the document in the same size font as the rest of the text, and was conspicuous in that it was the sole provision that contained bold and italicized typeface. This case likewise is distinguishable from *Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, which did not involve arbitration, concerned unconscionability rather than contract formation, and featured a superseding contract the plaintiff "was asked to sign the contract without warning and told it was a mere 'formality.'" (*Ellis*, *supra*, 18 Cal.App.4th at p. 1804.)

Vaca's final argument regarding the formation of the agreement is a legal one. She contends that the arbitration provision is void as a matter of law because it does not apprise her of her constitutional right to a jury trial and does not contain an express waiver of that right. The California Supreme Court has rejected this argument. In *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 (*Madden*), the Court held that an otherwise enforceable agreement to arbitrate need not contain an express waiver

---

[6] In the portion of her brief discussing unconscionability, Vaca suggests that Howard defrauded her by failing to inform her that she was waiving her right to a jury trial. There is no evidence in the record that Howard defrauded Vaca or even made misleading representations to her.

13

of the right to jury trial. The *Madden* court explained, "to predicate the legality of a consensual arbitration agreement upon the parties' express waiver of jury trial would be as artificial as it would be disastrous" because "[w]hen parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of, the judicial—a forum in which, as they well know, disputes are not resolved by juries. Hence there are literally thousands of commercial and labor contracts that provide for arbitration but do not contain express waivers of jury trial. Courts have regularly enforced such agreements. . . ." (*Id.* at pp. 713-714.) The Supreme Court more recently reaffirmed this principle in *Pinnacle Museum Tower Association v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 245 (*Pinnacle*), where it declined to read unwritten procedural requirements into the arbitration statute in light of the strong public policy favoring arbitration. The Court of Appeal has applied the holding of *Madden* in the context of initial attorney retainer agreements. (See *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1108-1109.)

*Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1506 is not to the contrary. There, the court concluded that an arbitration provision that by its terms applied to "fees, costs, or any other aspect of our attorney-client relationship" was limited to disputes concerning financial matters because a broader construction could misleadingly "extract[ ]" from a client the "significant yet inconspicuous relinquishment of the client's rights regarding future claims of malpractice." The arbitration provision here expressly encompassed "claims for legal malpractice, breach of fiduciary duty, and attorney fee disputes." The arbitration provision here also was not presented to Vaca under conditions similar those in *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 360-362, in which an arbitration provision was included in documents patients signed before being admitted to a hospital. In contrast, after an oral advisement in Spanish, Vaca was given the opportunity to carefully review the agreement and arbitration provision carefully before signing it and returning it by mail.

In sum, we are not persuaded the trial court erred in concluding that a valid arbitration agreement existed.

14

### 4. Unconscionability

Vaca also relies upon section 1281.2, subdivision (b) for her alternative argument, that the agreement she entered with Howard, "or at least the Arbitration Clause," is subject to revocation for being unconscionable.

Unconscionability is a valid defense to a petition to compel arbitration. (*AT&T Mobility LLC v. Concepcion* (2010) 563 U.S. 333, 131 S. Ct. at p. 1746; *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142 (*Sonic-Calabasas*).) Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made[,]" or may "limit the application of any unconscionable clause. . . ." (Civ. Code, § 1670.5, subd. (a).) Whether an agreement or provision thereof is unconscionable is a question of law subject to de novo review. (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 401.)

The unconscionability doctrine is aimed at ensuring that contracts do not impose unduly oppressive or unfairly one-sided terms that are unreasonably favorable to the more powerful party. (*Sonic-Calabasas*, *supra*, 57 Cal.4th at p. 1145.) "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.)

"The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that

the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.)

Vaca contends that the retainer agreement was procedurally unconscionable because it was a contract of adhesion. A contract of adhesion is a standardized contract, imposed and drafted by a party of superior bargaining strength, that is presented to the weaker party on a take-it-or-leave-it basis. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113.) Typically, the stronger party drafts the adhesive contract and gives the weaker party no opportunity to negotiate its terms, and the weaker party has no realistic opportunity to look elsewhere for a more favorable contract, but must adhere to the standardized agreement. (*Cubic Corp. v. Marty* (1986) 185 Cal.App.3d 438, 449.) "'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. The second — a principle of equity applicable to all contracts generally — is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable."'" [Citation.]" (*Cubic Corp., supra*, at p. 450.)

Here, even if the contract was adhesive, the other hallmarks of procedural unconscionability are minimal. (See *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 689 (*Lane*) [the mere fact that a contract is adhesive is insufficient to invalidate an arbitration agreement].) There was disparity in the bargaining power of the parties: Howard, the drafting party, is an attorney, and Vaca, the "adhering" party, does not speak English and has only a third-grade education in Spanish. There is no evidence that Howard held all the bargaining power, however. Howard presented the agreement to Vaca in the language she spoke and read and did not obfuscate the arbitration provision. Vaca was afforded the opportunity to consult with independent counsel and to cancel or reject the agreement within ten days of signing it. Vaca's brother was present and reviewed the agreement with her. And as Howard points out, he

16

"was hardly the only medical malpractice lawyer in town who could take Vaca's case on a contingency fee basis."

Howard did neglect to include with the agreement the rules under which any disputes would be arbitrated, which "could be a factor in support of a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration." (*Lane*, *supra*, 224 Cal.App.4th at p. 690.)[7] Even if the omission of the rules did result in surprise to Vaca, the failure to attach rules by itself, is insufficient to sustain a finding of procedural unconscionability. (*Ibid.*) And here, the other indicia of procedural unconscionability are lacking. On the record before us, we conclude that the retainer agreement and arbitration provision it contained was not procedurally unconscionable.

Even if it was, any minimal procedural unconscionability would have to be accompanied by significant substantive unconscionability to render the agreement or arbitration provision unenforceable. (See *Pinnacle*, *supra*, 55 Cal.4th at p. 247.) Substantive unconscionability focuses on the "overly harsh" or "one-sided" nature of an agreement. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) Vaca argues that the the arbitration provision was substantively unconscionable because it lacked an express waiver of her jury trial right, and required her to share the costs of arbitration equally with Howard. These terms do not render the agreement or arbitration provision substantively unconscionable.

As discussed above, an arbitration provision need not contain an express waiver of the jury trial right to be valid. (*Madden*, *supra*, 17 Cal.3d at pp. 713-714.) Vaca's allegation that Howard suffers from "Jury Phobia" does not render the agreement's lack of an express waiver overly harsh or one-sided.

---

[7] Vaca argues that the failure to provide arbitration rules renders an agreement substantively unconscionable, but we have held that the "failure to attach the arbitration rules could be a factor in support of a finding of procedural unconscionability." (*Lane*, *supra*, 224 Cal.App.4th at p. 690.) We accordingly discuss the absence of arbitration rules in connection with procedural unconscionability.

17

Neither does the clause obligating Vaca to share the costs of arbitration equally with Howard. Vaca relies exclusively on *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1254, for the proposition that the cost-sharing clause of the arbitration agreement was substantively unconscionable. However, that case concluded only that a cost-sharing provision was an "[a]dditional element[] of substantive unconscionability," not that a cost-sharing provision standing alone renders an agreement or provision substantively unconscionable. Moreover, section 1284.2 establishes cost-sharing as the default rule in the arbitration context: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." The judicially created exception to this rule set forth in *Armendariz*, *supra*, 24 Cal.4th 83 at p. 102 and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1077, has not been extended beyond the context of employment litigation. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 507-508). Vaca's claim that she could not afford to pay the arbitration fees more than three years after the agreement was signed cannot alter this result, as unconscionability is assessed at the time the contract is signed. (Civ. Code, § 1670.5, subd. (a).) There is no evidence in the record that Vaca could not afford to share the costs of arbitration at the time she signed the agreement.

## II.     Order Confirming Award

### A.     Request for Judicial Notice

In his response brief on appeal, Howard asserts that the appellate record is "woefully deficient" because it lacks statements of decision from the trial court and Vaca's ex parte application to reopen her bankruptcy case. In reply, Vaca argues that no statements of decision were required because the trial court did not hold a trial, and explains that she did not include her ex parte application because she did not "believe this is necessary for the Court's decision." To assuage Howard's concerns, however, Vaca

18

filed a motion for judicial notice in which she requests that we take judicial notice of her ex parte application to reopen her bankruptcy proceedings and the docket in those proceedings. Vaca contends these documents are properly noticeable under Evidence Code section 452, subdivisions (d) and (h), and are relevant "to show the basis of re-opening of Appellant's bankruptcy case and also the abandonment by the Chapter 7 Trustee of Appellant's claims against Respondent Howard and other Defendants." She concedes that the documents were not presented to the trial court.

Howard opposes the motion. He argues that the documents are irrelevant and cannot be considered for the truth of the matters asserted therein. In reply, Vaca asserts that Howard's "180 degree turn" is "not well taken." She also points out that the ex parte application was submitted to the trial court in connection with the request for judicial notice she made below, and clarifies that she is not asking us to take judicial notice of the truth of the matters contained in the proffered documents.

We agree with Vaca that Howard's claim that the documents are not relevant is not well taken in light of his earlier assertion that the appellate record was "woefully deficient" in their absence. We grant the motion for judicial notice pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a). We take notice only of the documents' existence, not the truth of the matters asserted therein. (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483.)

## B. Standard of Review

Our review of a judgment confirming an arbitration award is limited. "[B]ecause the Legislature has provided certain statutory grounds to overturn or modify an arbitrator's decision, courts should not subject such decisions to standard judicial review." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 982 (*Aguilar* ), citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 26-28.) The general rule is that an arbitrator's decision cannot be reviewed for errors of fact or law. (*Aguilar*, *supra*, 32 Cal.4th at p. 982.) The scope of judicial review is that which is exclusively defined by the applicable statutes providing for vacation (§ 1286.2) and correction (§ 1286.6) of awards (*Jordan v. California Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443), neither of

19

which timely was invoked in this case (see § 1288). We review the trial court's order confirming the arbitration award de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

### C.    Analysis

Vaca contends that the trial court should not have confirmed the arbitration award because the arbitration proceedings "validated" her opposition to Howard's petition to compel arbitration, the arbitration award no longer has a legal basis because she subsequently reopened her bankruptcy proceedings to correct the omission of her claims against Howard, and the arbitration award was inequitable in that it allowed Howard to "hide his own negligence behind another attorney's negligence."

Vaca's latter two arguments are in essence claims that the arbitrator's decision was factually and legally erroneous. These types of arguments are not cognizable; arbitrators' decisions cannot be reviewed for such errors. (*Aguilar*, *supra*, 32 Cal.4th at p. 982.) Had Vaca wanted to challenge the award as "procured by . . . undue means" (§ 1286.2, subd. (a)(1)), the appropriate course of action would have been to file a petition to vacate the award. The time to raise these claims has long since lapsed. (§ 1288 [100-day time limit].)

Vaca's first claim, though novel, is barred for the same reason. Vaca opposed the petition to compel arbitration on the grounds that she could not afford to arbitrate, and now contends that her subsequent lack of participation in the arbitration proceedings validated her assertions of indigence and unfairly permitted Howard to "sail through the arbitration unscathed." Thus, she essentially claims that the arbitration award was "procured by corruption, fraud, or other undue means." (§ 1286.2, subd. (a)(1).) This argument does not provide a basis to deny confirmation of the award. The trial court "shall confirm the award as made" provided that the party seeking confirmation duly serves and files its petition (§ 1286), and Vaca has not alleged an infirmity in Howard's petition or the service thereof.

The trial court did not err in confirming the arbitration award.

20

## DISPOSITION

The judgment of the trial court is affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

21