Filed 6/24/24  Abrishamcar v. Oracle America CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARYAM ABRISHAMCAR et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>ORACLE AMERICA, INC.,<br><br>        Defendant and Appellant. | A167116<br><br>(San Mateo County<br> Super. Ct. No. CIV535490) |

Defendant Oracle America, Inc. (Oracle) appeals from an order denying its motion to compel arbitration of a claim brought by plaintiffs Maryam Abrishamcar and Kavi Kapur (collectively, plaintiffs) under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA).  In moving to compel arbitration nearly seven years into the case, Oracle argued previously-controlling law had precluded it from enforcing plaintiffs' arbitration agreements until the United States Supreme Court issued its opinion in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 [142 S.Ct. 1906, 213 L.Ed. 2d 179] (*Viking River*).  The trial court concluded Oracle's motion was untimely and Oracle had waived its right to compel arbitration.  We conclude, however, that under the unusual circumstances of this case, Oracle's motion was timely and not waived.

1

On the merits, we reverse the order to the extent it denied the motion to compel arbitration of the individual PAGA claims. We do so because we are duty bound to apply *Viking River*'s holding here because this case was pending in the trial court when the Supreme Court announced its decision. (*Harper v. Virginia Dept. of Taxation* (1993) 509 U.S. 86, 90 [113 S.Ct. 2510, 125 L.Ed. 2d 74] ["application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision"].) Still, we understand the trial court's reticence to refer the individual PAGA claims to arbitration in this case. The court had already conducted a trial and issued findings on some of the issues to be referred to an arbitrator. Oracle's insistence on arbitration at this point in the proceedings is seemingly more about its hope for a better result than a genuine desire for " 'an expeditious and cost-effective way of resolving disputes' " (*People v. Maplebear Inc.* (2022) 81 Cal.App.5th 923, 930).

## I. LEGAL FRAMEWORK

Because this case involves the relationship between PAGA claims and employment arbitration agreements, we begin by summarizing the evolution of the law on the arbitration of PAGA claims.

### A. PAGA Claims

"PAGA authorizes 'an aggrieved employee,' acting as a proxy or agent of the state Labor and Workforce Development Agency (LWDA), to bring a civil action against an employer 'on behalf of himself or herself and other current or former employees' to recover civil penalties for Labor Code violations they have sustained." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1113 (*Adolph*).) "A PAGA claim for civil penalties ' " 'is fundamentally a law enforcement action.' " ' [Citation.] 'The "government

2

entity on whose behalf the plaintiff files suit is . . . the real party in interest." ' " (*Id.* at p. 1117.)

### B. *PAGA Waivers:* Iskanian *and* Viking River

In 2015—when Abrishamcar filed this lawsuit—the applicable law governing the arbitration of PAGA claims derived from *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). Under *Iskanian* and its progeny, PAGA claims were generally not subject to arbitration. (*Iskanian*, at pp. 382–383.) "After *Iskanian*, it was settled law in California that PAGA claims could not be compelled to arbitration, in whole or in part." (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1287 (*Piplack*).)

In June 2022, the United States Supreme Court issued its opinion in *Viking River*, *supra*, 596 U.S. 639, which abrogated *Iskanian* in part. In *Adolph*, *supra*, 14 Cal.5th 1104, the California Supreme Court summarized the effect of *Viking River*:

"In *Iskanian*, we held that a predispute categorical waiver[1] of the right to bring a PAGA action is unenforceable (*Iskanian, supra*, 59 Cal.4th at pp. 382–383)—a rule that *Viking River* left undisturbed (see *Viking River*, *supra*, 596 U.S. at pp. 659–661, 662–663 [the FAA[2] does not preempt this rule]). We explained that such waivers violate California public policy and Civil Code sections 1668 and 3513. [Citation.]

"In addition, *Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the

---

[1] This type of categorical waiver, prohibiting PAGA claims from being brought in any forum, is commonly called a "wholesale waiver" of PAGA claims. (See *Adolph*, *supra*, 14 Cal.5th at p. 1114.)

[2] Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA).

3

plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims).[3] (*Iskanian*, *supra*, 59 Cal.4th at p. 384; see *Viking River*, *supra*, 596 U.S. at pp. 648–649.) We explained that 'whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* [i.e., non-individual] claims frustrates the PAGA's objectives.' (*Iskanian*, at p. 384; see *ibid*. ['[W]here . . . an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law.'].) *Viking River* also left this rule intact. [Citations.]

"Following our decision in *Iskanian*, various courts held that employers may not require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings. [Citations.] *Viking River* held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.' (*Viking River*, *supra*, 596 U.S. at p. 662.) . . . Requiring parties to adjudicate a PAGA action entirely in one proceeding, the high court said, 'compels parties to either go along with an arbitration in which the range of issues under

---

[3] In *Viking River*, the court observed that the term " 'representative' " is used in conjunction with PAGA claims "in two distinct ways." (*Viking River*, *supra*, 596 U.S. at p. 648.) First, PAGA claims are always representative in the sense that they are enforcement actions brought by employees acting as representatives—agents or proxies—of the state. But in a second sense, some PAGA claims are representative in that they are based on code violations sustained by employees other than the plaintiff(s). This latter sense distinguishes between violations suffered by the named plaintiff(s) (individual claims) and those suffered by other employees (non-individual claims). (*Viking River*, at pp. 648–649.) We endeavor to consistently use the terms "individual" and "non-individual" when referring to the second sense.

4

consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under the FAA.' (*Viking River*, at p. 661.) Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims if the agreement is covered by the FAA." (*Adolph*, *supra*, 14 Cal.5th at pp. 1117–1119.) "Consequently, under *Viking River*, employers may enforce an agreement mandating arbitration of a plaintiff's individual PAGA claim, even if the agreement does not require arbitration of the plaintiff's nonindividual claims." (*Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 796.)

## II. BACKGROUND

### A. Plaintiffs' Arbitration Agreements

Abrishamcar and Kapur worked for Oracle as sales representatives until 2015 and 2017, respectively. As part of their employment, they entered into substantively identical arbitration agreements (agreement) with Oracle. The agreement stated, "Employee and Oracle understand and agree that, except as set forth below, any existing or future dispute or claim arising out of or related to Employee's Oracle employment, or the termination of that employment, including but not limited to disputes arising under the Plan, will be resolved by final and binding arbitration and that no other forum for dispute resolution will be available to either party, except as to those claims identified below."

The agreement included a class/representative action waiver stating, "Any claim by Employee against Oracle which is subject to arbitration under the terms of this Agreement to Arbitrate Disputes must be brought in Employee's individual capacity and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiffs or similar non-

5

individual proceeding ('class action'). Employee expressly waives any and all rights to bring, participate in or maintain in any forum any class action regarding or raising claims which are subject to arbitration under the terms of this Agreement to Arbitrate Disputes. The arbitrator shall not have authority to combine or aggregate similar claims or conduct, or conduct any class action or make an award to any person or entity not a party to the arbitration. Any claim that all or part of the class action waiver . . . is unenforceable or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."

Additionally, the agreement included a severability clause stating, "If any portion of this Agreement to Arbitrate Disputes is for any reason, held invalid or unenforceable, or contrary to public policy or any law, the remainder of the Agreement to Arbitrate Disputes shall not be affected by such invalidity or unenforceability, but shall remain in full force and effect, as if the invalid or unenforceable term or portion thereof had not existed within this Agreement to Arbitrate Disputes."

The agreement provided it was governed by the FAA.

## B. Proceedings Below

In September 2015, Abrishamcar filed a complaint against Oracle asserting a single cause of action under PAGA brought in her individual capacity (individual claim) and on behalf of all aggrieved former and current Oracle employees (non-individual claim). She alleged numerous Labor Code violations, including failure to provide a timely, written, signed commission contract; failure to set forth the method for computing and paying commission wages; unlawful deductions from earned commission wages; failure to pay commission wages when due; and imposition of an illegal confidentiality agreement.

6

In response, Oracle did not move to compel arbitration.[4] Instead, in November 2015, Oracle demurred to and moved to strike the complaint. Oracle included a reservation of rights in its motion, stating the agreement to arbitrate and class/representative action waiver was inapplicable to PAGA claims under then-current authority, and it reserved "the right to assert its right to arbitrate Plaintiff's individual PAGA claim, and her waiver of representative and class claims, in the event of a change in the law."

After the trial court overruled Oracle's demurrer and denied its motion to strike, Oracle answered the complaint in February 2016. It did not allege the agreement as an affirmative defense. Extensive discovery practice followed. Both parties propounded and responded to written discovery and conducted depositions. In February 2018, plaintiffs filed the operative first amended complaint which added Kapur as a plaintiff and alleged a single PAGA cause of action. Oracle answered the amended complaint; it did not allege the agreement as an affirmative defense.

Further discovery, motion practice, and trial followed. Oracle deposed plaintiffs and four other employees. In April 2018, the trial court ruled in plaintiffs' favor on cross-motions for summary adjudication regarding one of plaintiffs' alleged Labor Code violations. In October 2018, the trial court approved the parties' agreement to conduct a three-phase bench trial. The first two phases would address plaintiffs' specific Labor Code violation claims, and the third phase would address penalties. The court conducted a nine-day phase one trial in January 2019, after which it issued its tentative decision in August 2019. The court decided in plaintiffs' favor on certain issues and in Oracle's favor on others. It conducted an eleven-day phase two

_____

[4] A defendant may file a petition to compel arbitration in lieu of filing an answer to a complaint. (Code Civ. Proc., § 1281.7.)

7

trial in November 2019 and January 2020, after which it issued its tentative decision in November 2020. Again, the court decided in plaintiffs' favor on certain issues and in Oracle's favor on others.

## C. Certiorari Granted in Viking River

In December 2021, the United States Supreme Court granted certiorari in *Viking River*. Shortly thereafter, Oracle asked plaintiffs to consider stipulating to stay proceedings pending the decision; plaintiffs refused. Oracle did not move to stay the proceedings because it believed its chance of success was low. According to Oracle, the trial court later confirmed its belief when, in a separate proceeding involving different parties, the court denied a motion to stay pending a decision in *Viking River*.

In January 2022, and to narrow the issues for phase three of trial, both sides moved for summary adjudication regarding calculation of penalties. In its two motions, Oracle identified the grant of certiorari in *Viking River*. Oracle stated that *Viking River* was "a challenge to the *Iskanian* rule that PAGA claims are not subject to arbitration under the FAA, [and] Oracle does not waive its ability to argue that this action is subject to the arbitration agreements entered by Plaintiffs, in the event the Supreme Court abrogates the *Iskanian* rule."

The trial court heard the parties' motions for summary adjudication in March 2022, and it issued initial and amended rulings in June 2022. The Supreme Court issued its opinion in *Viking River* two days after the trial court filed its initial order on the summary adjudication motions. Phase three of trial has not been conducted.

## D. Oracle's Motion to Compel Arbitration

In June 2022—less than one week after *Viking River* was issued— Oracle notified plaintiffs it would move to compel arbitration, and the parties

8

agreed to a briefing schedule for the motion. In August 2022, Oracle moved to compel arbitration of plaintiffs' individual PAGA claims and to dismiss the non-individual PAGA claims. Oracle argued that after *Viking River*, plaintiffs' individual PAGA claims should be compelled to arbitration and, after that happened, their non-individual claims should be dismissed because plaintiffs would lack standing to maintain those claims in court. Anticipating plaintiffs' opposition, Oracle asserted its ability to seek to compel arbitration did not arise until *Viking River* was decided, because before that, *Iskanian* precluded enforcement of plaintiffs' agreement to arbitrate their PAGA claims. Thus, Oracle contended, it would have been futile to bring its motion before *Viking River*.

Plaintiffs opposed, arguing that the agreement did not apply to PAGA claims and did not provide a basis to separate plaintiffs' individual PAGA claims for arbitration. Even if the agreement applied to PAGA claims, plaintiffs contended the doctrines of waiver, estoppel, and unconscionability barred arbitration. On the topic of waiver, plaintiffs argued Oracle chose to forego arbitration in favor of litigation even though there was no legal bar to enforcement of the agreement. Oracle litigated the matter for seven years, including conducting two phases of trial, and failed to act promptly after certiorari was granted in *Viking River*. Plaintiffs claimed compelling arbitration would prejudice plaintiffs and the state. Finally, plaintiffs argued that even if there were an enforceable agreement to arbitrate the individual PAGA claims, they retained standing to pursue the non-individual PAGA claims in court.

After a hearing, the trial court issued a 31-page order denying Oracle's motion. The court concluded Oracle's motion was untimely because it needed to have been brought before trial commenced. Seeking arbitration after a

9

trial has been conducted, or the merits have been adjudicated, is contrary to the purpose and intent of arbitration, the court concluded. The court recognized a change in law had occurred with the issuance of *Viking River*, stating, "Oracle correctly points out that during the pendency of this PAGA Representative action, the . . . *Iskanian* decision applied, such that this Court would have been bound to deny any motion to compel arbitration of any and all of the PAGA claims in this lawsuit." However, it decided that a change in the law to allow arbitration must occur before trial. "That the law changed after the time that Defendant could have brought this motion does not change the fact that it is untimely. The train already left the station. Defendant is not entitled to ignore years of litigation, discovery, and adjudication of issues on the merits, and then ask to start all over again via arbitration. There can be no forum shopping after the fact."

The trial court also concluded "in the alternative," that Oracle waived its right to compel arbitration. It considered six factors as stated in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*): (1) whether the party's actions were inconsistent with the right to arbitrate; (2) whether the litigation machinery had been substantially invoked and the parties were well into preparation of a lawsuit before the moving party notified the opposing party of its intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps had taken place; and (6) whether the delay affected, mislead, or prejudiced the opposing party.

The trial court concluded these factors weighed in favor of concluding Oracle waived its right to compel arbitration. Additionally, recognizing that

10

prejudice was not a requirement to prove waiver pursuant to a recent United States Supreme Court decision—*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 [142 S.Ct. 1708, 212 L.Ed. 2d 753] (*Morgan*)—the court explained that even if it ignored the prejudice factor, "the other factors still weigh[ed] heavily in finding that [Oracle] waived any right to invoke contractual arbitration."

## III.    DISCUSSION

Oracle contends the trial court erred by denying its motion to compel arbitration of plaintiffs' individual PAGA claims.[5]  Oracle's overarching argument is that, pursuant to *Iskanian*, it had no right to enforce the agreement during the pendency of this lawsuit until *Viking River* was issued. Therefore, it contends, its motion was neither untimely nor waived.  We agree.

### A. Principles of Compelling Arbitration & Standard of Review

Code of Civil Procedure section 1281.2 provides that, upon motion by a party to an arbitration agreement, a court "shall order" arbitration "if it determines that an agreement to arbitrate the controversy exists, unless it determines" that "[t]he right to compel arbitration has been waived by the [moving party]."

In this context, waiver " 'is used " 'as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' " [Citation.]

---

[5] Oracle moved to compel arbitration of plaintiffs' individual PAGA claims and to dismiss plaintiffs' non-individual PAGA claims.  The trial court denied both requests.  On appeal, Oracle has not challenged the court's denial of the motion to dismiss.  (See *League to Save Lake Tahoe v. County of Placer* (2022) 75 Cal.App.5th 63, 105 ["arguments not raised in an opening brief are forfeited"]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

11

This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have "waived" its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act.' " (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444 (*Lewis*).)

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.' " (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) "Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; see also *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 77 (*Barrera*); *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

### B. Timeliness of Oracle's Motion

Oracle contends the trial court erroneously concluded the motion to compel arbitration was untimely. We agree.

To properly invoke the right to arbitrate, a party must timely raise the defense. (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 81.) When no time limit to compel arbitration is specified in a statute or in the contract, "a party must still demand arbitration within a reasonable time." (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30.) A "party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration." (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043.) A " 'party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate.' " (*Lewis, supra*, 205 Cal.App.4th at p. 446.)

The trial court concluded Oracle's motion to compel arbitration was untimely because it was not brought before trial commenced. Oracle insists this conclusion is unsupported by legal authority, and plaintiffs do not argue otherwise. Plaintiffs contend, though, the court's conclusion was correct.[6] (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

Here, a time limit for demanding arbitration was neither specified in the agreement nor proscribed by statute. Therefore, the parties agree, as do we, that the time limit for Oracle to file its motion was within a reasonable time. (*Wagner Construction Co. v. Pacific Mechanical Corp.*, *supra*, 41 Cal.4th at p. 30.) The parties disagree, though, when it was reasonable for Oracle to assert its right to arbitration. According to Oracle, a motion to compel arbitration brought before *Viking River* would have been futile, and therefore a reasonable time for it to act was after it first became possible to seek arbitration. Oracle filed its motion less than two months after *Viking River* was issued.

Plaintiffs contend Oracle's delay in filing its motion was unreasonable because its futility argument fails and because this case has progressed too far to be sent to arbitration. We are not persuaded.

---

[6] In concluding a motion to compel arbitration must be brought before trial, the trial court cited the FAA, California arbitration statutes, a Louisiana state opinion, and an arbitration treatise. Oracle argues the cited authority contains no language supporting the court's imposed deadline, and plaintiffs make no argument to the contrary. Plaintiffs explain the court's legal citations and reasoning may have been defective. Therefore we do not address this authority.

## 1. *Futility*

Futility is grounds for delay in moving to compel arbitration. (*Iskanian*, *supra*, 59 Cal.4th at p. 376.) When the law makes a motion "highly unlikely to succeed," it "weighs in favor of finding that the party has not waived its right to arbitrate." (*Ibid.*; *Piplack*, *supra*, 88 Cal.App.5th at p. 1289 [failure to file a futile motion is not an unreasonable delay].)

Courts have confirmed that moving to compel arbitration of individual PAGA claims was futile before *Viking River*. For example, in *Piplack*, *supra*, 88 Cal.App.5th at pages 1289–1290, the Fourth District Court of Appeal concluded the defendant's delay in seeking arbitration was reasonable, despite vigorously defending itself in the trial court, because such attempt would have been futile before *Viking River*. In *Barrera*, *supra*, 95 Cal.App.5th at pages 78–79, our colleagues in Division Two agreed with *Piplack*'s analysis and concluded the defendants' delay in moving to compel arbitration was not unreasonable because they had raised their right to arbitrate as soon as they had any chance of success. We agree with the analysis in *Piplack* and *Barrera*.

Here, plaintiffs raise a contention not specifically addressed in *Piplack* or *Barrera*. They argue Oracle's futility argument fails because when this action was filed in 2015, no controlling authority barred arbitration of plaintiffs' individual PAGA claims.[7] Plaintiffs assert *Iskanian* left open this

---

[7] The agreement's waiver provision does not mention PAGA. Plaintiffs waived their right to bring any "class, collective, representative, multiple plaintiffs or similar non-individual proceeding." The parties neither explicitly concede, nor dispute, whether the agreement's reference to "representative" proceedings includes a PAGA claim. We observe that in opposing Oracle's motion, plaintiffs argued the agreement did not apply to PAGA claims. The trial court did not reach this argument, although it did refer to the agreement's waiver provision as "a class waiver and PAGA

14

issue. They contend that it was only in 2017 that the issue of arbitrability of PAGA claims was resolved, when three California appellate courts had held that agreements to arbitrate PAGA claims are not enforceable without the state's consent. (See *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445–448; *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 871.) Therefore, plaintiffs argue, there was a period between 2015 and 2017 during which a motion to compel arbitration of individual PAGA claims would not have been futile.[8] We are not persuaded. *Iskanian*, subsequent authority, and the trial court's order demonstrate it would have been futile for Oracle to move to compel arbitration of plaintiffs' individual PAGA claims before *Viking River*.

*Viking River* left two of *Iskanian*'s rules intact: (1) a predispute wholesale waiver of the right to bring a PAGA action is unenforceable, and (2) an agreement that, while providing for arbitration of alleged individual claims compels waiver of non-individual claims, is unenforceable. (*Adolph*, *supra*, 14 Cal.5th at pp. 1117–1118.) In *Iskanian*, the court "explained that

---

representative action waiver." For purposes of this appeal, we assume the agreement covers PAGA claims but we make no determination on this issue.

[8] Plaintiffs briefly discuss *Johnson v. Oracle America, Inc.* (N.D.Cal., Nov. 17, 2017, No. 17-cv-05157-EDL) 2017 U.S.Dist.Lexis 222941, a class action proceeding against Oracle involving the same arbitration provision as in this case. Pointing to statements in Oracle's briefs in that matter, they contend that Oracle has previously admitted that its arbitration agreement did not bar PAGA actions. In a footnote, they make a brief judicial estoppel argument. In response, Oracle asserts the "judicial estoppel argument is wrong and irrelevant" and plaintiffs' characterization of Oracle's statements is inaccurate. We need not consider the estoppel argument as it was not properly identified nor comprehensively argued by plaintiffs. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 [" 'we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument' "].)

'whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* [i.e., non-individual] claims frustrates the PAGA's objectives.' " (*Adolph*, at p. 1118.)  Regarding division of a PAGA action, the court went on to explain, "*Viking River* held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.' " (*Adolph,* at p. 1118, quoting *Viking River*, *supra*, 596 U.S. at p. 662.)  Thus, the California Supreme Court cited with approval the United States Supreme Court's characterization of *Iskanian* as creating a rule that barred dividing a PAGA claim into individual and non-individual claims. Other courts have done so as well.  In discussing *Iskanian*, the *Piplack* court explained that the California Supreme Court "also concluded PAGA actions could not be split into 'individual' and 'representative' components . . . in order to compel arbitration of the individual component." (*Piplack*, *supra*, 88 Cal.App.5th at p. 1287.)

Following *Iskanian*, courts have considered whether an individual PAGA claim could be compelled to arbitration.  A division of this court characterized *Iskanian* as not having decided the issue:  "[W]hile assuming the possibility of such a claim, the *Iskanian* court did not directly decide whether an 'individual PAGA claim' . . . is cognizable." (*Tanguilig v. Bloomingdale's, Inc.*, *supra*, 5 Cal.App.5th at p. 677.)  After *Iskanian*, "various courts held that employers may not require employees to 'split' PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings.  ([Citation]; [see, e.g., ]*Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649.)" (*Adolph, supra*, 14 Cal.5th at p. 1118.)  *Williams* was issued before this lawsuit was filed in 2015.  Therefore, at least one post-*Iskanian* published opinion on the

topic existed when this action was filed. (See *Williams*, at pp. 645, 649 [plaintiff's single PAGA cause of action "cannot be split into an arbitrable 'individual claim' and a nonarbitrable representative claim"].)

Even before *Iskanian*, there was authority suggesting that a PAGA claim could not be split to compel an individual claim into arbitration. (See, e.g., *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123–1124 [PAGA claim is not an individual claim but is a representative claim on behalf of the state, thus it was not within the scope of the defendant's request that individual claims be submitted to arbitration]; see also *Iskanian, supra,* 59 Cal 4th at p. 383 [citing *Reyes*].) Eventually, there was a uniform conclusion that a court could not compel arbitration of any PAGA claim— either an individual claim or a non-individual claim. (See *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 472 [listing cases]; see also *Piplack, supra,* 88 Cal.App.5th at p. 1287 ["After *Iskanian*, it was settled law in California that PAGA claims could not be compelled to arbitration, in whole or in part."].)

The trial court itself confirmed the futility of bringing an earlier motion to compel arbitration. In denying Oracle's motion, the court stated, "Oracle correctly points out that during the pendency of this PAGA Representative action, the California Supreme Court's *Iskanian* decision applied, such that this Court would have been bound to deny any motion to compel arbitration of any and all of the PAGA claims in this lawsuit." And in the case's infancy in 2016, the court had explained that pursuant to *Iskanian*, the right to bring a PAGA action was "non-waivable and any contractual waiver is unenforceable. [¶] In *Iskanian* the holding of the case was that the ability to

17

bring a representative action under PAGA cannot be waived by contract between employer and employee."[9]

Additionally, plaintiffs' counsel admitted to the futility of an earlier motion to compel arbitration. At the hearing on Oracle's motion, counsel conceded Oracle "did not quite possess a right to arbitrate . . . an individual PAGA claim until *Viking* [*River*]. And that's because no doubt that *Iskanian* did not recognize such a claim, extant law did not recognize the existence of that type of claim." Counsel explained the agreements were entered when *Iskanian* was "the rule." "The law at the time, it would not have been enforceable," referring to dividing a PAGA claim into individual and non-individual parts. That division "would not have been allowed at that time of *Iskanian* and cases following *Iskanian*."

Plaintiffs suggest Oracle should have brought its motion earlier and gone through the appellate process, urging "[n]othing prevented [Oracle] from making the very same arguments that defendant successfully made in *Viking River*." But that is not the standard for futility. (See *Iskanian, supra*, 59 Cal.4th at p. 376.)

Considering *Iskanian*, the opinions that followed, and the trial court's determination that it would have been bound to deny the motion had Oracle brought it before *Viking River*, an earlier motion would have been futile as it would have been "highly unlikely to succeed." (*Iskanian, supra*, 59 Cal.4th at p. 376.)

---

[9] The same judge has presided over this case from the time Oracle appeared in 2015.

## 2. *Progression of Litigation*

Plaintiffs contend that notwithstanding futility, this case has progressed too far to now be sent to arbitration. Again, we are not persuaded.

The timeline and events of this lawsuit are not in dispute. Seven years passed before Oracle moved to compel arbitration, and extensive litigation was conducted, including two phases of a three-phase bench trial. Plaintiffs rely on cases concluding much shorter delays in moving to compel arbitration were unreasonable. (See, e.g., *Lewis, supra*, 205 Cal.App.4th at p. 446 [five-month delay]; *Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 543 [24-month delay].) Plaintiffs' reliance on these cases is misplaced as they did not involve circumstances in which moving to compel arbitration earlier was futile, which futility was removed by a change in law. (See, e.g., *Lewis*, at pp. 446–447 [rejecting defendant's futility argument].)

Plaintiffs contend prejudice, including time and expense incurred, must be considered in assessing the reasonableness of Oracle's delay. When the delay in seeking arbitration is reasonable, any prejudice to plaintiffs, including expense and delay, does not mandate a finding that the moving party waived its right to arbitration. (Cf. *Iskanian*, *supra*, 59 Cal.4th at p. 377 [court contrasted the circumstances before it from cases finding waiver where "substantial expense and delay were caused by the *unreasonable* or *unjustified* conduct of the party seeking arbitration"].) Here, any prejudice to plaintiffs was not caused by Oracle's unreasonable or unjustified conduct. The "mere fact that the parties then proceed to engage in various forms of pretrial litigation does not compel the conclusion that the party has waived its right to arbitrate when a later change in the law permits arbitration." (*Id.* at pp. 377–378.) That the "defendant vigorously defended itself in the trial

19

court makes no difference because the relevant question is whether there was any *unreasonable* delay." (*Piplack*, *supra*, 88 Cal.App.5th at p. 1289.)

Plaintiffs' reliance on *Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342 is misplaced. There, the court determined the expenditure of time and money were relevant to the prejudice analysis. (*Id.* at p. 361.) However, it did so under circumstances where the delay in seeking arbitration was unreasonable, which caused the plaintiff to incur substantial expense. (*Id.* at p. 361.) The delay was unreasonable, *Oregel* had concluded, because the futility rule asserted by the defendant was inapplicable and the defendant was silent for 17 months regarding an intent to seek arbitration. During its silence, the parties conducted extensive discovery, including discovery on class action allegations, which would have no bearing on the plaintiff's claim in an arbitration. (*Id.* at pp. 356–361.) Here, in contrast, the futility rule applies, and from the time Oracle appeared in this action it put plaintiffs on notice of its position that the agreement was not enforceable but, if the law changed, it would seek to assert its right to arbitration.

Plaintiffs also rely on *Gutierrez v. Wells Fargo Bank* (9th Cir. 2012) 704 F.3d 712, but that case does not assist them. There, after a two-week bench trial and judgment against it, the defendant first sought to compel arbitration on appeal. (*Id.* at p. 718.) It claimed its right to arbitration did not mature until a United States Supreme Court decision changed the law. (*Ibid*.) The court concluded the defendant had waived its right to arbitration, reasoning that vacating judgment at that stage would undermine the arbitration agreement, prejudice plaintiff and the class members, and waste judicial resources. (*Id.* at pp. 718–719.)

*Gutierrez* is distinguishable. It involved a permissive arbitration clause, judgment had been entered, and the defendant had remained silent as

20

to arbitration even after the Supreme Court granted review of the case on which it relied before trial had concluded. (*Gutierrez v. Wells Fargo Bank*, *supra*, 704 F.3d at pp. 718, 720.) Here, the agreement provides for mandatory arbitration, which Oracle sought to enforce in the trial court as soon as it had a possibility of success. The third phase of trial has not commenced, and judgment has not been entered. *Gutierrez* was unique. The court emphasized this, stating it was "an unusual, perhaps sui generis, case in which the specific circumstances counsel this result." (*Id.* at p. 719.)[10]

No outer limit has been identified at which time a court may no longer compel a party to arbitration. Courts have reversed course after a proceeding had concluded. For example, in *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, the trial court granted the defendant's motion to compel arbitration, arbitration was conducted, and an award was issued. (*Id.* at pp. 111–112.) The trial court subsequently denied the plaintiff's petition to vacate the award. (*Id.* at p. 112.) The appellate court reversed. It concluded the arbitration agreement was unconscionable and unenforceable and the trial court had erred in compelling arbitration, and it ordered litigation proceedings to resume. (*Id.* at pp. 111, 119, 122.) Here, we cannot conclude that the stage of litigation bars arbitration.

We conclude Oracle's delay in demanding arbitration was reasonable.

---

[10] Other cases on which plaintiffs rely to support their argument that compelling arbitration at this stage would serve no purpose are distinguishable because they did not involve circumstances where the party seeking arbitration had a reasonable explanation for its delay—a change in the law—which was then considered with prejudice to the other side. (See, e.g., *Desert Regional Medical Center, Inc. v. Miller* (2022) 87 Cal.App.5th 295, 313, 322; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1452.)

## C. Waiver

Oracle contends the trial court erroneously denied its motion to compel on the alternative ground that Oracle had waived its right to arbitration. We agree.

Where the FAA applies, as it does here, the waiver determination is governed by federal law. (*Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.)

Waiver " 'is the intentional relinquishment or abandonment of a known right.' " (*Morgan, supra,* 596 U.S. at p. 417.) It is a defense to arbitration and the party claiming waiver bears a heavy burden of proof. (*Martin v. Yasuda* (9th Cir. 2016) 829 F.3d 1118, 1124.) To satisfy this burden, plaintiffs must demonstrate: (1) defendant's knowledge of an existing right to compel arbitration; and (2) defendant's acts inconsistent with that existing right. (*Ibid.*) In determining whether there has been waiver, a court focuses on the actions of the party seeking to compel arbitration. (*Morgan,* at pp. 417, 419.)

Plaintiffs argue Oracle knew of its right to compel arbitration from the commencement of this lawsuit and acted inconsistently with that right. Oracle contends it had no such right until *Viking River* changed the law, and it acted consistently with that knowledge. We agree with Oracle.

A motion to compel arbitration of plaintiffs' individual PAGA claims before *Viking River* would have been futile. In these circumstances, Oracle could not have had "knowledge of an existing right to compel arbitration." (*Martin v. Yasuda, supra,* 829 F.3d at p. 1124.) "Failing to make a futile motion to compel arbitration surely does not constitute an intentional relinquishment of the right to compel arbitration should the law change." (*Piplack, supra,* 88 Cal.App.5th at p. 1290.) "Where there was 'no existing

right to arbitration' because the 'then-prevailing law of [the] circuit' would have rendered such a motion 'futile,' there can be no waiver of the right to arbitration." (*In re Apple & AT&TM Antitrust Litigation* (N.D.Cal. 2011) 826 F.Supp.2d 1168, 1173.)

Because Oracle had no right to compel arbitration until *Viking River*, it follows that it could not act inconsistently with a nonexistent right. To the contrary, Oracle's actions were consistent with its knowledge that it did not have such a right. When it appeared in this action in 2015, Oracle identified the agreement, explained that under *Iskanian* the waiver was inapplicable to PAGA claims, and notified the trial court and plaintiffs that it was reserving its right to seek arbitration if the law changed. Not alleging arbitration as an affirmative defense is consistent with knowledge that it had no such right. (See *Piplack, supra*, 88 Cal.App.5th at pp. 1289–1290 [omission of arbitration as an affirmative defense did not constitute waiver].) Nor did Oracle act inconsistently when it conducted discovery, filed motions for summary adjudication, and participated in the first two phases of trial. Oracle was "compelled to conduct itself in that fashion as a result of the existing state of the law." (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1049.)

Previously, a party seeking to prove waiver was also required to demonstrate a third element, "prejudice to the party opposing arbitration resulting from such inconsistent acts." (*Britton v. Co-op Banking Group* (9th Cir. 1990) 916 F.2d 1405, 1412, abrogated on other grounds by *Coinbase, Inc. v. Bielski* (2023) 599 U.S. 736 [143 S.Ct. 1915, 216 L.Ed. 2d 671].) The United States Supreme Court recently held that a showing of prejudice to the party opposing arbitration is not required to prove waiver. (*Morgan, supra*, 596 U.S. at pp. 416–417, 419 ["prejudice is not a condition of finding that a

23

party, by litigating too long, waived its right to stay litigation or compel arbitration"].)

Relying on *Morgan*, Oracle contends prejudice is not a factor to be considered in the waiver analysis. That is not accurate. *Morgan* held that a party seeking to prove waiver does not need to demonstrate prejudice. It did not hold that prejudice is irrelevant to a waiver determination. The court did explain, though, that the court should focus on the actions of the party seeking to compel arbitration. (*Morgan*, *supra*, 596 U.S. at pp. 417, 419.) Here, even considering any claimed prejudice to plaintiffs, the prejudice was not caused by Oracle's conduct. (See *Iskanian*, *supra*, 59 Cal.4th at p. 377 [cases finding prejudice were distinguishable because, in "this case, the delay was reasonable in light of the state of the law at the time and [plaintiff's] own opposition to arbitration"].)

We conclude Oracle did not waive its right to compel arbitration.

## IV.    DISPOSITION

The order denying Oracle's motion to compel arbitration and to dismiss is reversed in part. The order denying the motion to compel arbitration of plaintiffs' individual PAGA claims is reversed, and the matter is remanded for the trial court to decide the motion on the merits. This disposition does not affect the order denying Oracle's motion to dismiss the non-individual PAGA claims.[11] Plaintiffs' May 28, 2024 motion for judicial notice is denied.[12] Oracle is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

---

[11] See footnote 5, *ante*.

[12] Plaintiffs filed a motion requesting judicial notice of various trial court "documents and trial court proceedings indicated in the documents" filed between January and March 2024. Oracle opposed the motion during oral argument. Plaintiffs' motion is denied. (See Evid. Code, §§ 452, subds. (c), (d), 459, subd. (a).) The documents and proceedings sought to be judicially noticed are irrelevant to the resolution of this appeal because they

LANGHORNE WILSON, J.


WE CONCUR:


HUMES, P. J.


SIGGINS, J.[*]


A167116
*Abrishamcar v. Oracle America, Inc.*

---

occurred after the trial court issued its appealed order and—despite plaintiffs' brief contention in their motion—they do not establish the appeal is moot. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [appellate court reviews the correctness of a decision as of the time of its rendition, on the record before the trial court]; *Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 927, fn. 4 [burden on party claiming mootness to establish appeal is moot].)

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.